**HOUSTON & T. C. R. CO. v. JOHNSON.**

No. 1153—5116.

Commission of Appeals of Texas, Section A.

July 22, 1931.

R. G. Payne and Robertson, Robertson & Gannon, all of Dallas, and Baker, Botts, Parker & Garwood, of Houston, for plaintiff in error.

C. A. Leddy, of Austin, and Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

HARVEY, P. J.

This is a suit by the plaintiff in error, the Houston & Texas Central Railroad Company against Homer Johnson, the defendant in error, to recover a balance of freight charges for the transportation of a carload of apples from a town in British Columbia to Dallas, Tex. Johnson defended on the ground of estoppel. The trial court gave judgment for Johnson, and the Court of Civil Appeals affirmed that judgment. 1 S.W.(2d) 706, 707.

The following statement of the case, as made by the Court of Civil Appeals, is adopted:

"On October 6, 1921, the Okanagan United Growers, Limited, of Vernon, British Columbia, as consignor, shipped from Kelowna, British Columbia, a car of apples consigned to Hughes Brokerage Company, at Oklahoma City, Okl. The shipment was diverted and reconsigned to Hughes Brokerage Company

at Dallas, Tex., advise Finch Brokerage Company. Upon arrival at Dallas, and while the car was upon the tracks of the carrier, Homer L. Johnson, the appellee herein, purchased the car from the Finch Brokerage Company, agreeing to pay therefor $1,072.50, less all charges thereon. Johnson was upon the 'credit list' of the carrier, and shipments were delivered to him with the understanding that he could pay the charges thereon in 48 hours after delivery. The car was delivered to Johnson under this understanding.

"The carrier represented to Johnson that the freight charges upon the car had been prepaid and the total charges thereon amounted to $185.40, consisting of $10.30 demurrage and $175.10 duty charge. Johnson paid said sum of $185.40 to the carrier, which gave him a receipt therefor, and which showed that the freight charges had been prepaid. Thereafter, and acting upon this information with respect to the freight charges being prepaid and believing the same to be true, Johnson paid to the Finch Brokerage Company the agreed price for the apples, less said sum of $185.40. In fact, the freight charges, which amounted to the sum of $532.60, had not been prepaid. Had Johnson been informed of this fact, he could and would have protected himself by deducting the amount thereof from the purchase price paid to the Finch Brokerage Company. The original order bills of lading properly indorsed were surrendered to the carrier when delivery was made to Johnson.

"This suit was later brought by the delivering carrier against Johnson and David Finch, the latter trading under the name of David Finch Brokerage Company, to recover the freight charges. Finch was later dismissed from the suit because service upon him could not be obtained, he having moved out of the state. The Hughes Brokerage Company was not joined in the suit because appellant was unable to locate an agent of said company within this state upon whom service could be had.

"The trial court held that the carrier was estopped to recover the freight charges from Johnson. The correctness of this ruling is the sole question presented by appellant."

By section 2 of the Interstate Commerce Act (49 USCA § 2), it is provided: "If any common carrier subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property or the transmission of intelligence, subject to the provisions of this chapter, than it charges, demands, collects, or receives from any other person or persons

for doing for him or them a like and contemporaneous service in the transportation or transmission of a like kind of traffic or message under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is prohibited and declared to be unlawful."

Section 6, par. 7, of the Act, 49 USCA § 6 (7) provides: "No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

Section 3, par. 2, 49 USCA § 3(2), reads in part as follows: "No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to assure prompt payment of all such rates and charges and to prevent unjust discrimination. * * *"

█ A consideration of these statutes, and of decisions interpreting the scope and purpose of the act, leads inevitably to the conclusion that the plaintiff in error is not precluded from the recovery sought. By the transaction which comprehended the purchase of the apples by Johnson, and his obtaining from the carrier the possession thereof, Johnson became bound to pay to the carrier whatever freight charges were in fact due. The provisions of the statutes are such as to make the collection of those charges a public duty on the part of the carrier, and to incapacitate the carrier to refund or to remit "in any manner or by any device" any portion of such charges. Johnson was charged with knowledge of these statutory provisions and of their legal effect. He relied at his peril on the representation that the freight charges had been prepaid; for he was charged with knowledge that the

carrier could not by that means evade the public duty, imposed by the statutes, to collect the full amount of charges lawfully due.

In New York, New Haven & Hartford R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 26 S. Ct. 272, 277, 50 L. Ed. 515, the purpose of the statutes, and the agency through which that purpose is to be carried out, were pointed out. It is there said: "The all-embracing prohibition against either directly or indirectly charging less than the published rates shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about. If the public purpose which the statute was intended to accomplish be borne in mind, its meaning becomes, if possible, clearer. What was that purpose? It was to compel the carrier, as a public agent, to give equal treatment to all."

In Pittsburgh, C., C. & S. L. Railway v. Fink, 250 U. S. 577, 40 S. Ct. 27, 28, 63 L. Ed. 1151, Fink was the consignee, and the freight was delivered to him by the railroad company. He paid the amount of freight charges demanded at the time, but it was afterwards discovered that this amount was less than the law required. The railroad company sued Fink for the difference. The latter pleaded an estoppel. The court said: "Under such circumstances consistently with the provisions of the Interstate Commerce Act the consignee was only entitled to the merchandise when he paid for the transportation thereof the amount specified as required by the statute. For the legal charges the carrier had a lien upon the goods, and this lien could be discharged and the consignee become entitled to the goods only upon tender or payment of this rate. * * * The transaction, in the light of the act, amounted to an assumption on the part of Fink to pay the only legal rate the carrier had the right to charge or the consignee the right to pay. This may be in the present as well as some other cases a hardship upon the consignee due to the fact that he paid all that was demanded when the freight was delivered; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation. * * * Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the Act as to equal rates, in violation of the provisions of the statute."

In New York Cent. & H. Railway v. York &

Whitney, 256 U. S. 406, 41 S. Ct. 509, 510, 65 L. Ed. 1016, the court said, with reference to a consignee who was held to have become bound, as a matter of law, to pay the freight charges, by his acceptance of the goods from the carrier: "The consignee could not escape the liability imposed by law through any contract with the carrier."

Again, in Louisville & N. Railway v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 442, 68 L. Ed. 900, the court declared in sweeping terms that "no contract of the carrier could reduce the amount legally payable, or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

While the precise question, as to the application of the principle of estoppel in a case where the carrier falsely represents that the freight charges have been prepaid, was not directly involved in any of the above cases, it is quite clear that the declarations made by the court in those decisions, as well as the plain provisions of the statutes themselves, exclude the idea that the carrier may create an estoppel by making such a false representation. That an estoppel does not arise in such a case is maintained by the Supreme Court of Wisconsin (Chicago & N. W. Railway v. Case Plow Works, 173 Wis. 237, 180 N. W. 846; Waters v. Leather Co., 176 Wis. 16, 186 N. W. 173), and by the New York Court of Appeals (New York Cent. Railway v. Federal Sugar Refining Co., 235 N. Y. 182, 139 N. E. 234, 26 A. L. R. 1312), and by various inferior courts of the federal system [Central Warehouse Co. v. Railway (C. C. A.) 20 F.(2d) 828; Great Northern Railway v. Hyder (D. C.) 279 F. 783; Western & A. Railway v. Underwood (D. C.) 281 F. 891]. A contrary holding was made in the case of Davis v. Akron Feed & Milling Co. (C. C. A.) 296 F. 675. That holding does not impress us as being sound.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals be reversed, and that judgment be here rendered for the plaintiff in error for the amount sued for.

CURETON, C. J.

The judgment of the county court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.