**YATES et al. v. TEXAS & N. O. R. CO.**

**No. 12912.**

Court of Civil Appeals of Texas. Dallas.

Oct. 5, 1940.

Rehearing Denied Nov. 9, 1940.

Ira Butler and J. T. Harris, Jr., both of Fort Worth, for appellants.

Robertson, Leachman, Payne, Gardere & Lancaster, of Dallas, and Baker, Botts, Andrews & Wharton, of Houston, for appellee.

BOND, Chief Justice.

The Texas and New Orleans Railroad Company, plaintiff in the court below, instituted this suit against the defendants, Earl Yates and W. O. Yates, copartners, to collect the sum of $1,104.94, alleged to be due on account of deficiency freight rate charged on various shipments of sand and gravel. The Railroad Company, pertinent here, alleged:

"11. That on various dates during the months of February, March, April, and May, 1935, there were consigned to defendants and defendants received and accepted a total of one hundred fifty-seven (157) cars containing gravel or sand, said cars weighing various amounts. These said cars moved from Randol, Texas, and Byron, Texas, which points are situated on the Boisd'arc and Southern Railway, and were consigned to defendants at Appleby, Texas, which is situated on the line of the Texas & New Orleans Railroad Company, all as is more fully shown by Exhibit A attached hereto and made a part hereof for all purposes.

"111. That the 157 cars referred to above contained sand and gravel weighing fourteen million seven hundred thirty-seven thousand seven hundred (14,737,700) pounds; that after the delivery of the above-mentioned cars the defendants paid to plaintiff and plaintiff collected from defendants freight charges at the rate of One Dollar and Twenty-five Cents ($1.25) per net ton, and based on said rate plaintiff collected from defendants the sum of Nine Thousand Two Hundred Eleven and 52/100 Dollars ($9,211.52); that after collecting the freight charges at the rate of $1.25 per net ton and after the total sum of $9,211.52 had been collected, plaintiff learned that the rate of $1.25 was not the correct and lawful rate to be charged for such shipments, and plaintiff learned that the rate applicable to such shipments was One Dollar and Forty Cents ($1.40) per net ton, which rate is shown in Texas, Lines Tariff, Agent Cummings 2-N ICC 361, Item 2762; that under the correct rate of $1.40 per net ton the total amount

of freight charges due plaintiff by defendants on the 157 cars above referred to was and is the sum of Ten Thousand Three Hundred Sixteen and 46/100 Dollars ($10,316.46) thereby creating an undercharge in the sum of One Thousand One Hundred Four and 94/100 Dollars ($1,104.94) all as is more fully set out in plaintiff's Exhibit A, which exhibit shows in detail point of origin and date of shipment, car number, weight of sand or gravel in each car, rate applicable, total amount collected for each car at the rate of $1.25 per ton, the amount due at the correct, lawful and applicable rate of $1.40 per net ton and the amount of undercharge on each of the 157 cars."

To said pleadings, the defendants answered by plea in estoppel, and, also, by way of cross-action, or set-off, alleging that the Railroad Company received and thereafter failed to deliver to the defendants 402 tons of material described in plaintiff's petition, of the reasonable value of $940.02, claimed to have been lost in transit. The answer, material here, is as follows:

"That on or about January 1, 1935, and before these defendants entered into a certain sub-contract with J. S. Moore and Son to perform certain highway construction work, that the Texas and New Orleans Railroad Company, its servants, agents and employees, represented to these defendants that the freight rate applicable to such shipment of gravel and sand as are described in plaintiff's original petition, was $1.25 per net ton and relying upon such representations, these defendants did enter into a certain sub-contract with J. S. Moore and Son, believing that said $1.25 rate was correct; but that for such representations on the part of the plaintiff, Texas and New Orleans Railroad Company, its agent, servants and employees, these defendants would not have entered into such sub-contract with J. S. Moore and Son and would not have arranged for and accepted the shipment described in plaintiff's original petition. Defendants allege that they did rely upon said representations so made and do now rely upon such representations so made and in the event said representations were false, the said plaintiff well knew that said representations were false and quoted said price for the purpose of practicing fraud and deceiving these defendants, together with the public in general as to the correct freight rate, and is therefore estopped to deny their said acts and the said freight rate of $1.25 per ton. In this connection the defendants allege that at the time they were quoted said rate of $1.25 by the plaintiff that there was a controversy and question as to whether or not the Boisd'arc and Southern Railway Company was a common carrier and if said railway road was not a common carrier the rate of $1.25 would have been correct.

"Now comes the defendants by way of set-off, counterclaim and reconvention, and respectfully show that in the hauling and transporting the materials described in plaintiff's petition and in Exhibit 'A' thereof, the plaintiff failed to deliver to the defendants four hundred and two tons of material described in plaintiff's petition of the reasonable value of $940.02; that the plaintiff received the same from the North Texas Material Company for the defendants herein and the said materials were wholly within the custody and control of plaintiff herein and that defendants do not know how or where the said materials were lost nor from which of the cars described in plaintiff's original petition the materials were lost, but that plaintiff negligently failed to deliver the same to the defendants herein."

To these allegations, plaintiff interposed: First, special exception to the allegations bearing on the defense of estoppel, in that, a railroad common carrier cannot be estopped to charge and collect a true and lawful freight rate under the circumstances alleged; therefore, such pleading is not a legal defense to plaintiff's suit for the collection of the rate applicable to the particular shipment here involved; and, second, to the pleadings directed to shortage of sand and gravel, in that, such allegations are too general; it is incumbent upon the defendants, in suits against a common carrier for loss of goods in transit, as against special exceptions, to allege and necessarily prove the identity of the railway car or cars, by numbers or otherwise, claimed to have been short in the particulars named.

The trial court sustained plaintiff's contentions, and, on trial of the cause, the defendants having declined to amend, judgment was entered in favor of the Railroad Company against the defendants for the sum of $1,104.94. This appeal is directed to the action of the court in sustaining plaintiff's demurrer to defendants' defense

of estoppel, and to its cross-action, accordingly, entering judgment for the Railroad Company.

We think the trial court correctly sustained plaintiff's demurrer to defendants' defense of estoppel, because such allegations, in effect, circumvent the letter and spirit of the statute (art. 6474, R.S.1925), obviously designed to prohibit common carriers from charging, demanding, collecting or receiving preferential or advantageous charges for transportation.

Article 6474, supra, reads:

"Unjust discrimination is hereby prohibited and the following acts or either of them shall constitute unjust discrimination.

"1. If any railroad subject hereto, directly or indirectly, or by any special rate, rebate, drawback or other device, shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, or shall give any undue or unreasonable preference or advantage to any particular person, firm or corporation, or locality, or to subject any particular description of traffic to any undue or unreasonable prejudice, delay or disadvantage in any respect whatsoever.

"2. If any railroad company shall fail or refuse, under regulations prescribed by the Commission, to receive and transport without delay or discrimination the passengers, tonnage and cars, loaded or empty, of any connecting line of railroad, and every railroad which shall, under such regulations as the Commission may prescribe, fail or refuse to transport and deliver without delay or discrimination any passengers, tonnage or cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad; provided perishable freights of all kinds and live stock shall have precedence of shipment.

"3. If any railroad company shall charge or receive any greater compensation in the aggregate for the transportation of like kind of property or passengers for the shorter line than for a longer distance over the same line; provided, that upon application to the Commission any railroad may in special cases, to prevent manifest injury, be authorized by the Commission to charge less for longer than for shorter distances for transporting persons and property, and the Commission shall, from time to time, prescribe the extent to which such designated railroad may be relieved from the operation of this provision. No injustice shall be imposed upon any citizen at intermediate points. Nothing herein shall be so construed as to prevent the commission from making what are known as 'group rates' on any line or lines of railroad in this State.

"4. *Penalty.*—Any railroad company guilty of unjust discrimination as hereinbefore defined shall for each offense pay to the State of Texas a penalty of not less than five hundred dollars nor more than five thousand dollars.

"5. *Exceptions.*—Nothing herein shall prevent the carriage, storage or handling of freight free or at reduced rates, or to prevent railroads from giving free transportation or reduce transportation under such circumstances and to such persons as the law of this State may permit or allow."

To prohibit a common carrier from collecting legally published rates for a shipment of freight on a defense of estoppel, as alleged in defendants' answer, would be sanctioning a violation of an Act of the Legislature, expressly designed to prohibit discrimination by common carriers. This statute requires a common carrier to charge the same rate to each shipper of goods for the same haul. If one shipper could effectively circumvent the published legal tariff rate under circumstances as alleged by defendants, then, certainly, others could do likewise, under more or less favorable circumstances. Thus, by such means, a common carrier would be left free to quote an improper and lower rate, thereby permitting the shipper to rely thereon, ship the freight at the quoted rate, and, in a manner, abrogate the statute prohibiting common carriers from charging, demanding, collecting, and receiving discriminatory rates for the same haul.

The statute makes the collection of legal charges a public duty on the part of carriers and to prohibit under severe penalty the carrier from refunding or remitting in any manner or by any device any portion of such charges. Yates was charged with knowledge of these statutory provisions, and, too, the carrier could not by any means evade its public duty in failing

to collect the full amount of the legal freight rate. Houston & T. C. R. v. Johnson, Tex.Com.App., 41 S.W.2d 14, 83 A. L.R. 241.

In the Johnson case, above cited, the Commission of Appeals was dealing with the provisions of the Interstate Commerce Act, 49 U.S.C.A. §§ 2, 3(2), 6(7), relating to a shipment of freight in an interstate transaction; while, the instant case involves intrastate shipments, yet, it will be observed that the Interstate Act was designed for the same purposes, and the same reasons are behind that Act as are behind the enactment of the Legislature of the State of Texas. The language of the Texas statute is substantially the same as that of the Act of Congress, and clearly intended to cover the same situation and achieve the same result.

Therefore, the trial court having properly sustained plaintiff's special exception to defendants' defense of estoppel, and, otherwise, no question is raised as to the right of appellee to collect the legally published and proper freight rates for the shipments involved in its suit; and, appellants' cross-action for damages for loss of materials in transit being an independent action, not based on any claim alleged by appellee, the judgment in favor of the Railroad Company against appellants for the sum of $1,104.94, with interest and cost of the court below, should be affirmed, affected, if any, only by such offset or counterclaim which appellants, on another trial, may recover.

■■ A reference here to appellants' offset or counterclaim is to be taken as a reference to the entire pleadings of both appellants and appellee. It will be observed that the Railroad Company pleaded and attached to its petition an exhibit, depicting in detail the various shipping transactions had with appellants, showing the details of each transaction, the number of the railroad cars, the dates of shipment, and the weight of the materials received and transported in each car. It was, therefore, incumbent upon the plaintiff to prove the various details to establish its cause of action. The defendants could also rely on the burden of plaintiff to establish its cause of action, and to avoid liability for any amount which plaintiff's pleadings and proof failed to establish. The question of the existence of a shortage of materials received and that delivered in this case is one of fact and not of law. An examination of plaintiff's pleadings discloses that the net weight of the cars of gravel involved in this suit varied from 80,000 pounds to approximately 115,000 pounds per car. The defendants alleged shortage of 402 tons, amounting to 804,000 pounds, or about 8 carloads, which, of necessity, would have had to be spread over a large number of the 157 cars involved in the shipment. It devolved upon the defendants to make proof of the extent of the Railroad Company's liability. The mere fact that defendants allege that they did not know the identification of the railroad cars which were short when delivered does not imply, as a matter of law, that defendants cannot make the quantum of proof, in some legal way, necessary for them to recover.

■■ An elementary rule of pleading requires the petition to be as specific and certain as the nature of the case will permit. Texas & N. O. Ry. Co. v. Farrington, 40 Tex.Civ.App. 205, 88 S.W. 889. Measured by that rule, or any other rule of pleading, defendants' pleadings were sufficient, as against demurrer, to admit proof of shortage on any or all of the enumerated cars mentioned in the suit, and to put appellee upon full and complete notice of the kind and character of proof which would be offered in proving their set-off or counterclaim. A conjecture that the defendants shall not be able to meet the burden of proving by acceptable evidence of its loss of materials in transit from each individual car involved in this suit is beside the question.

In the light of the entire record, we think the pleading is sufficient to meet plaintiff's demurrer. Consequently, the judgment of the court is reversed, and cause remanded for trial on appellants' set-off or counterclaim, and the judgment in favor of the plaintiff shall be reduced only to the amount of defendants' recovery. The cost on appeal is taxed against appellee.

Affirmed in part; reversed and remanded in part, with instructions.