TEXAS & NEW ORLEANS RAILROAD COMPANY V.
EARL YATES, ET AL.

No. 7819. Decided March 25, 1942.
Rehearing overruled May 13, 1942.
(161 S. W., 2d Series, 1050.)

*Baker, Botts, Andrews & Wharton,* of Houston, *Robertson, Leachman, Payne, Gardere & Lancaster,* of Dallas, for plaintiff in error, Texas & New Orleans Railroad Company.

Estoppel cannot be used to prevent a common carrier from charging and collecting the true, correct and legally published

traffic rates. Houston & T. C. Ry. Co. v. Ahlers, 274 S. W. 333; Davis v. Moody, 203 Ky. 203, 261 S. W. 1101; Mellon v. Stockton, 225 Mo. App. 122, 35 S. W. (2d) 612.

*J. T. Harris, Jr.,* of Longview, and *Ira Butler,* of Fort Worth, for defendants in error, the Yates.

Defendants' plea of estoppel on their cross action was not subject to demurrer. McGinty v. Texas P. & L. Ry. Co., 71 S. W. (2d) 354; Arnold v. Jones, 26 Texas 335; Texas & N. O. Ry. Co. v. East, 57 S. W. (2d) 175; Johnson v. Byler, 38 Texas 606.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by the Texas & New Orleans Railroad Company against Earl Yates and W. O. Yates, co-partners, to recover the sum of $1,104.94 as the unpaid balance of freight charges due for the transportation of 157 carloads of sand and gravel. In the trial court, the railroad company recovered judgment for the amount sued for. The defendants (whom we shall call Yates) appealed and the Court of Civil Appeals affirmed, in part, and reversed, in part, the trial court's judgment and remanded the cause. 144 S. W. (2d) 916.

The points in dispute have reference to certain exceptions which the trial court sustained, and which will be explained later on.

The petition of the railroad company contains the following allegations:

"11. That on various dates during the months of February, March, April, and May, 1935, there were consigned to defendants and defendants received and accepted a total of one hundred fifty-seven (157) cars containing gravel or sand, said cars weighing various amounts. These said cars moved from Randol, Texas, and Bryan, Texas, which points are situated on the Boisd'arc and Southern Railway, and were consigned to defendants at Appelby, Texas, which is situated on the line of the Texas & New Orleans Railroad Company, all as is more fully shown by Exhibit A attached hereto and made a part hereof for all purposes.

"111. That the 157 cars referred to above contained sand and gravel weighing fourteen million seven hundred thirty-seven

thousand seven hundred (14,737,700) pounds; that after the delivery of the above mentioned cars the defendants paid to plaintiff and plaintiff collected from defendants freight charges at the rate of One Dollar and Twenty-Five Cents ($1.25) per net ton, and based on said rate plaintiff collected from defendants the sum of Nine Thousand Two Hundred Eleven and 52/100 Dollars ($9,211.52); that after collecting the freight charges at the rate of $1.25 per net ton and after the total sum of $9,211.52 had been collected plaintiff learned that the rate of $1.25 was not the correct and lawful rate to be charged for such shipments, and plaintiff learned that the rate applicable to such shipments was One Dollar and Forty Cents, ($1.40) per net ton, which rate is shown in Texas, Lines Tariff, Agent ·Cummings 2-N ICC 361, Item 2762; that under the correct rate of $1.40 per net ton the total amount of freight charges due plaintiff by defendants on the 157 cars above referred to was and is the sum of Ten Thousand Three Hundred Sixteen and 46/100 Dollars ($10,316.46) thereby creating an undercharge in the sum of One Thousand One Hundred Four and 94/100 Dollars ($1,104.94) all as is more fully set out in plaintiff's Exhibit A, which exhibit shows in detail point of origin and date of shipment, car number, weight of sand or gravel in each car, rate applicable, total amount collected for each car at the rate of $1.25 per ton, the amount due at the correct, lawful and applicable rate of $1.40 per net ton and the amount of undercharge on each of the 157 cars."

Yates pleaded an estoppel against a recovery by the railroad company. The basis alleged for the estoppel is to the effect that the railroad company, before any shipments were made, represented to Yates that $1.25 per ton was the rate which would be charged, and Yates relied on the representation. The railroad company directed a general exception to this plea of estoppel. The trial court correctly sustained the said exception, and Court of Civil Appeals correctly affirmed the judgment of the trial court in this respect. The very question raised by the exception is whether or not the railroad company had authority to collect from Yates a less rate than the rate of $1.40 per ton which was fixed by the State Railroad Commission. In deciding this question, a brief examination of some of the various provisions contained in Chapter 11, Title 112, of the Revised Statutes, will be illuminating:

Article 6474 provides, in part: "Unjust discrimination is hereby prohibited and the following acts or either of them shall constitute unjust discrimination:

"1. If any railroad subject hereto, *directly or indirectly,* or by any special rate, rebate, drawback *or other device,* shall charge, demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered or to be rendered by it than it charges, demands, collects or receives from any other person, firm or corporation for doing a like and contemporaneous service, * * *

"4. Penalty.—Any railroad company guilty of unjust discrimination as hereinbefore defined shall for each offense pay to the State of Texas a penalty of not less than five hundred dollars nor more than five thousand dollars."

It is to be observed that this statute, standing alone, has no reference to freight rates fixed by the railroad commission. For this reason, it becomes necessary to take into consideration the following provisions contained in the various articles indicated:

Article 6448. "The commission shall:
"1. Adopt all necessary rates, charges and regulations to govern and regulate freight and passenger traffic, to correct abuses, and prevent *unjust discrimination* * * in rates of freight and passenger traffic on the different railroads in this state. * * * ."

Article 6452. "In all actions between private parties and railway companies brought under this law, the rates * * * prescribed by the commission before the institution of such action shall be held conclusive, and deemed and accepted to be reasonable, fair and just * * *."

Article 6455. "The commission shall, when the classifications and schedule of rates herein provided are prepared and adopted, furnish each railroad affected thereby which is subject to the provisions of this title with a complete schedule in suitable form, showing the classification of freight made by it and the *rates fixed to be charged by such road for the transportation of each class of freight,* and shall cause a certified copy of such classification and schedule of rates to be delivered to each of

said railroads at its principal office in Texas, or to any agent of said company in this State; * * *."

Article 6456. "Each of said railroad companies shall cause said schedule to be printed in type of a size not less than pica, and shall have the same posted up in a conspicuous place at each of its depots, so as to be inspected by the public."

These statutory provisions leave us in no doubt that, in the present instance, the railroad company was charged with the public duty to collect from Yates the full amount of freight charges according to the rate fixed by the railroad commission, towit: $1.40 per ton, instead of $1.25 per ton as was actually collected. The railroad company could not by means of estoppel "or by any other device" escape the performance of this public duty. Yates was charged with notice of this. In a word the purpose of our statutes, as they relate to intrastate freight rates, is in every essential respect the same as that of the Federal statutes which we had under consideration in Houston & T. C. R. Co. v. Johnson, 41 S. W. (2d) 14.

We come now to consider the following paragraph of the answer of Yates, towit:

"Now comes the defendants by way of set off, counter claim and reconvention, and respectfully show that in the hauling and transporting the materials described in plaintiff's petition and in Exhibit 'A' thereof, the plaintiff failed to deliver to the defendants, four hundred and two tons of material described in plaintiff's petition of the reasonable value of $940.02; that the plaintiff received the same from the North Texas Material Company for the defendants herein and the said materials were wholly within the custody and control of plaintiff herein and that defendants do not know how or where the said materials were lost nor from which of the cars described in plaintiff's original petition the materials were lost, but that plaintiff negligently failed to deliver the same to the defendants herein."

To this paragraph of the answer, the railroad company urged the following special exception, which the trial court sustained, towit:

"Further answering, if such answer be necessary, plaintiff specially excepts to Paragraph 4 of defendants' answer and

cross-action in its entirety because the allegations therein are too broad and too general, too vague and indefinite to apprise this plaintiff of the kind and character of proof it will be called upon to meet, and further because it is not alleged in said Paragraph 4 which cars were alleged to be short; the number of the cars alleged to be short and identification of such cars are not alleged; and further because such allegations are mere general allegations of shortage and in law and not sufficient to allege a legal shortage; and of this special exception plaintiff prays judgment of the court."

Exhibit "A" to plaintiff's petition, to which reference is made in this paragraph of the Yates answer, is a detailed schedule of the various cars loaded with sand and gravel which the railroad company, during a four months period in the year 1935, received for transportation over its line of road. The date of each shipment, the weight of each load and the identity of each car are shown in the schedule. In view of the fact that the defendants are claiming damages for an aggregate shortage of 402 tons in the 157 carloads of sand and gravel when same were delivered to the defendants at Appleby, we have no doubt the railroad company had the right to demand that the defendants specify in their answer the particular cars which they claimed were short in load (and the amount of each shortage) at the time same were delivered to the defendants. Gulf, C. & S. F. R. Co. v. Minton, 24 S. W. (2d) 12. We are convinced, too, that this demand was sufficiently made by the exception set out above. The exception—though clumsily framed as it is— "intelligibly points out," as the court rule requires, the particular respects in which the plaintiff complains of the insufficiency of the allegations of said paragraph of defendant's answer. In other words, the exception is essentially a "special exception" as distinguished from a "general exception." (See 33 Tex. Jur. p. 581.) The trial court did not err in sustaining said special exception, and the Court of Civil Appeals erred in ruling to the contrary.

In the respect that the judgment of the trial court is reversed by the Court of Civil Appeals, the judgment of the last mentioned court is reversed, and the judgment of the trial court is in all respects affirmed.

Opinion adopted by the Supreme Court March 25, 1942.

Rehearing overruled May 13, 1942.