### TEXAS & N. O. R. CO. v. EAST TEXAS GRAVEL CO.

### No. 13427.

Court of Civil Appeals of Texas. Dallas.

Oct. 1, 1943.

Rehearing Denied Nov. 5, 1943.

Baker, Botts, Andrews & Wharton, of Houston, and Robertson, Leachman, Payne, Gardere & Lancaster and Henry D. Akin, all of Dallas, for appellant.

Callaway & Reed and O. D. Montgomery, all of Dallas, for appellee.

BOND, Chief Justice.

In 1934, appellee, East Texas Gravel Company, was engaged in mining, selling and shipping concrete gravel and sand from Randol, Texas, a point on the Bois d'Arc & Southern Railway, and during that year made and entered into a contract with Union Construction Company, whereby it sold to said Company, f. o. b. point of origin, gravel at $2.15 per ton and sand at $1.95 per ton, plus the legally established freight charges from Randol to point of destination, the established freight rate to be collected by the common carriers before delivery. In agreement with such contract, appellee shipped eighty-three cars of sand and gravel to Union Construction Company, cars loaded at Randol, consigned to the buyer at Cooper, Texas, via Bois d'Arc & Southern Railway, thence via the connecting line—Texas & New Orleans Railroad—to point of destination. Waybills and bills of lading were issued by the initial carrier, Bois d'Arc & Southern Railway, showing the true through freight rate of $1.10 per ton to be collected before delivery. Before shipping, the two Railroad Companies' officials in authority knew the terms and conditions of such sales, accordingly accepted the shipments with written

and oral instructions to collect the $1.10 freight rate from the consignee.

During the time of these transactions, appellant was adversely interested in an order made by the Texas Railroad Commission, designating the Bois d'Arc & Southern Railway a common carrier of freight, was then involved in litigation to avoid the detrimental effect of such status to its interest, and, in consequence, refused the shipments on the bills of lading on arrival at Bois d'Arc, and, without the consent of the shipper, and over its protest, arbitrarily issued other waybills and bills of lading of its own design, showing Bois d'Arc, a station at the junction of the two Railroads, as the point of origin instead of Randol, and specified that the freight rate of 95¢ per ton, instead of $1.10 per ton, be collected from the consignee at Cooper, Texas. The bills of lading in each instance were of uniform design and made provision (Section 7) that: "The consignor shall be liable for the freight and other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges. * * * Subject to Section 7 of conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignee shall sign the following statement: 'The carrier shall not make delivery of this shipment without payment of freight or other lawful charges.'" Appellee did not sign the bills of lading limiting liability, as provided in such stipulations.

The evidence is undisputed that, on delivery of the sand and gravel at Cooper, appellant could and would have collected the $1.10 freight rate from the consignee but for the litigation then pending over the status of the Bois d'Arc & Southern Railway. Failure to collect the full designated freight rate from Randol to Cooper was assigned by appellant to avoid apparent recognition by it of the Railroad Commission's order designating the Bois d'Arc & Southern Railway a common carrier. After a lapse of seven years, the Commission's order having been upheld in the meantime, demand was made upon the consignee for payment of the unpaid freight of 15¢ per ton, and because of the Company's insolvency and dissolution and the surrender of its Charter during the interim, collection could not be obtained from it; hence appellant instituted this suit against appellee, claiming an undercharge freight rate on the shipments, aggregating $563.59.

The pleadings of the parties reflect the facts and on trial before the court, without a jury, judgment was entered against appellant.

Briefly, the issue involved in this appeal is that appellee, as consignor, having failed to avail itself of signing the bills of lading limiting its liability to the carrier for the freight charges on the shipments, as provided therein, it cannot escape the consequences of appellant's failure to collect the 15¢ pro rata charge due the Bois d'Arc & Southern Railway for hauls from Randol to Bois d'Arc.

We recognize the rule that a consignor of goods is responsible for all transportation charges in the absence of some agreement to the contrary with the carrier, and the obligation to pay arises upon an implied as well as express contract (8 T. J. 187–189). We further recognize that railroad companies are charged with a public duty to collect the full amount of freight charges, according to the rate fixed by the Railroad Commission, and that they cannot, by means of estoppel, or by any other device, escape performance of this public duty. Texas & N. O. R. Co. v. Yates, 139 Tex. 89, 161 S.W.2d 1050. In this instance, the Commission had designated the initial carrier a common carrier of freight, and had fixed the freight rate from Randol to Cooper at $1.10 per ton on sand and gravel. Appellee recognized the rate, directed the hauls, and required full collection of the rate on delivery at point of destination. Bills of lading, designating the terms and conditions of delivery, were regularly issued to appellee, thus it became the duty of the involved Railroad Companies to carry out their terms and conditions and collect the legal freight rate therein provided. Appellant had no legal right to change the terms of shipment, substitute bills of lading in transit showing shorter hauls and less freight charges than designated in the bills of lading theretofore issued. Appellant knew the station of Bois d'Arc was not the point of origin of such shipments, that 95¢ per ton was not

the legally fixed freight rate from point of origin to point of destination. Appellee did not agree that the shipments might be shipped as designated and the freight delivered to consignee on payment of 95¢ per ton freight rate, leaving the unpaid balance to await the action of appellant's suit to determine the status of the Bois d'Arc & Southern Railway as a common carrier. Appellant wagered its chance in the litigation over the protest of appellee, and lost. It refused to collect the amount designated in the bills of lading, and changed the contract to suit its own convenience in violation of law. The means employed was not a device to escape performance of a public duty, but was, we think, tantamount to a release of the shipper as an obligor for payment of freight. Appellant is in no position to urge that appellee failed to avail itself of limiting liability for the unpaid freight due and owing the initial carrier because of its failure to sign the bills of lading. In the course of dealings, appellant released the shipper's obligation to pay the freight rate and accepted the consignee as the obligor as effectively as appellee's signature would have done had it signed the bills of lading. We think appellee was released from the obligations. The judgment of the trial court is affirmed.

Affirmed.