The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,

v.

TEXAS INTERNATIONAL GAS & OIL COMPANY, Appellee.

No. 08–90–00359–CV.

Court of Appeals of Texas, El Paso.

June 12, 1991.

Rehearing Overruled July 3, 1991.

Steven L. Hughes, Grambling & Mounce, El Paso, for appellant.

R. Wayne Pritchard, Ginnings, Birkelbach, Keith & Delgado, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

OPINION

OSBORN, Chief Justice.

This appeal is from a judgment entered after a non-jury trial in a suit to collect freight charges from the consignee of sixty-one carloads of liquified petroleum gas after the consignor failed to pay such charges. The trial court denied recovery for charges on bills of lading which were marked for collection of charges from the consignor. We reverse and remand.

The Atchison, Topeka and Santa Fe Railway Company ("ATSF") filed suit against Central Petroleum Corporation ("CPC") and Texas International Gas & Oil Company ("TIGO") to recover freight charges for liquid petroleum gas ("LPG") which it transported by rail cars from Zuni, New Mexico to Montoya, Texas from June through September 1985. The suit also sought to recover demurrage charges. The consignor or shipper of the LPG became insolvent and was severed from the suit.

The case between ATSF and TIGO was submitted to the court upon a stipulation of facts. The unpaid freight charges were $81,035.70. The unpaid demurrage charges were $25,105.00. It was stipulated that five bills of lading were marked "Collect Freight from Texas International Oil & Gas" and the charges for those five cars totaled $7,746.62. All other shipments were made on bills of lading marked "Collect Freight from Central Petroleum." TIGO bought the LPG under an oral contract with CPC and transportation costs were included in the contract price which TIGO paid to CPC. ATSF had no contrac-

tual agreement with TIGO concerning payment of freight charges on LPG shipments.

The court entered judgment in favor of ATSF for the sum of $32,851.62, plus prejudgment interest and cost. That sum included freight charges of $7,746.62 and demurrage charges of $25,105.00. The court concluded that ATSF was estopped to collect the freight charges on all bills of lading which were marked for collection from CPC.

The Appellant railroad initially asserts the trial court erred in failing to render judgment for the full amount of the freight charges. Its basic argument is that bills of lading which were marked "collect" unlike bills of lading marked "prepaid" cannot serve as a basis for an estoppel to collect the full amount of the charges from the consignee when collection cannot be made from the consignor. We agree.

In *Illinois Steel Company v. Baltimore & Ohio Railroad Company*, 320 U.S. 508, 513, 64 S.Ct. 322, 325, 88 L.Ed. 259, 264 (1944) the Court said:

> The carrier is free to demand payment in advance by the consignor, or it may decline to make delivery to the consignee until the freight charges are paid or guaranteed, or if delivery is made to the consignee without payment, the consignee is also liable for all freight charges.

TIGO does not deny that it could be liable as a consignee, but it asserts it has an equitable defense of estoppel and that having relied upon the bills of lading which provided for collection from CPC, and having made full payment to CPC (which included a transportation charge), that it should not now be required to pay twice.

The Appellant urges that Texas law does not recognize an equitable defense even when a shipment has been made and the charges were marked "prepaid". It relies upon the holding in *Houston & T.C.R. Co. v. Johnson*, 41 S.W.2d 14 (Tex. Comm'n App.1931, judgmt adopted). The holding in that case was the basis for the decision in *Missouri Pacific Railroad Co. v. The Phelan Company*, 444 S.W.2d 832 (Tex.Civ.App.—Beaumont 1969, writ dism'd). In that case, the bills of lading

were marked "prepaid" and the consignee had reimbursed the consignor in reliance on this representation. When the consignor took bankruptcy, the carrier sued the consignee. Justice Keith, writing for the Court said:

> We well recognize the apparent hardship on the consignee where the carrier, by its own act in stamping the freight bill 'prepaid' has caused the consignee to pay the consignor for the merchandise and the freight only to be called upon by the carrier to pay the freight again. It was held, and properly so, in *[Houston & T.C.R. Co. v.] Johnson*, supra [41 S.W.2d 14 (Tex.Com.App.1931)] that 'an estoppel does not arise in such a case.' (41 S.W.2d at p. 16.)

In cases from other jurisdictions, mostly federal courts, the defense of estoppel has been applied on numerous occasions when shipments were made by a carrier to a consignee with an indication that the shipment was "prepaid". An equitable defense was raised in *Southern Pacific Transportation Co. v. Commercial Metals Co.*, 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982) where the consignor failed to sign a "nonrecourse" bill of lading which would have required the shipper to collect freight charges before making delivery. In that case, the Seventh Circuit, as the Appellee in this case, placed reliance upon the holding in *Consolidated Freightways Corporation of Delaware v. Admiral Corporation*, 442 F.2d 56 (7th Cir.1971). Justice Blackmun, writing for a unanimous court, distinguished the *Admiral* case. He wrote "[t]he defendant there was a *consignee* to whom goods had been delivered under bills of lading marked 'prepaid'." 456 U.S. at 347, 102 S.Ct. at 1822. Yet, he did note that "the defendant [in *Admiral*] paid no freight charges; thus, an award of relief to the carrier creates no possibility of enforcing a double payment." *Id.* at 347, 102 S.Ct. at 1822. Near the end of its opinion, the Court did note several cases where "double payment" had served as a basis for an affirmative defense. A Texas court applied the estoppel principle in *Tom Hicks Transfer Company, Inc. v. Ford, Bacon &*

Davis Texas Incorporated, 482 S.W.2d 364 (Tex.Civ.App.—Texarkana 1972, no writ). In that case, the Court followed the holding in the *Admiral* case.

In those and other cases where the goods were shipped with a bill of lading marked "prepaid", the consignee would have had no reason to believe that any charges remained unpaid and that it should take some action to protect its own interest from additional charges. But, in this case, the consignee knew two things. First, payment had not been made. Second, the consignee would be liable for freight charges which the consignor did not pay. It could have protected itself by requiring proof of payment to the carrier before paying any transportation charges to the consignor. Certainly, TIGO knew there was some risk when it accepted shipments marked "Collect Freight from Central Petroleum" and it made payment without proof that CPC had paid ATSF. That would not be the case if it accepted shipments which were sent "prepaid" and the carrier represented it had the money in its pocket.

We conclude that bills of lading marked "prepaid" will work as an estoppel to prevent a double payment from a party which relies upon such bills when making a payment. We conclude that bills of lading marked "collect" will not work as an estoppel to prevent a double payment by a party which relies upon such bills when making a payment. We sustain Point of Error No. One.

Point of Error No. Two which complains of the trial court's failure to grant a new trial is moot as a result of our having sustained the first point of error.

The judgment of the trial court is reversed, and the case is remanded for entry of a judgment for unpaid freight charges of $81,035.70 and unpaid demurrage charges of $25,105.00, plus prejudgment interest and cost.