### GREAT NORTHERN RY. CO. v. HYDER.

(District Court, W. D. Washington, S. D. April 15, 1922.)

#### No. 3429.

Carriers ⬤➡194—Consignee, accepting goods on mistaken representation that freight is paid, held bound to pay.

    A consignee, who is not at any time the owner of goods shipped, who has not agreed with either the shipper or the carrier that he will pay the freight, and who accepts the goods on the carrier's mistaken representation that the freight has been prepaid, is bound by such acceptance to pay the freight; shipper, carrier, and consignee all being agents and trustees for the public in the matter of the enforcement of freight rates.

At Law. Action by the Great Northern Railway Company against May Hyder, doing business as the Hyder Furnace Company. On demurrer to answer and to affirmative defense. Demurrer to affirmative defense sustained.

Thomas Balmer, Edwin C. Matthias, and Alfred J. Clynch, all of Seattle, Wash., for plaintiff.

Hayden, Langhorne & Metzger, of Tacoma, Wash., for defendant.

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

CUSHMAN, District Judge. Plaintiff, a common carrier in interstate commerce by rail, sues the defendant for an unpaid freight charge on a carload of freight consigned and shipped from Des Moines, Iowa, to defendant at Tacoma, Wash., over the Chicago, Burlington & Quincy and Great Northern Railroads. The complaint alleges the establishment of a joint freight rate over such lines for such shipments, and the filing with the Interstate Commerce Commission of such freight tariff, and its posting and publication. It is further alleged that the bill of lading provided:

"The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required shall pay the same before delivery."

It is alleged that the plaintiff has paid the Chicago, Burlington & Quincy Railway Company the sum earned by and due it; that, on behalf of the defendant, there has been paid only a part of the amount due under such joint tariff. The plaintiff sues for the balance of such amount.

Defendant has answered, admitting the establishment, posting, and publication of the tariff and the joint rate for such freight. Defendant admits that, while the same was in effect, the shipment in question was made, consigned, and delivered to the defendant. Defendant denies knowledge of the above-quoted proviso in the bill of lading, denies that she was the owner of the freight consigned, denies knowledge of the amount of the freight due as alleged on the shipment, denies knowledge of plaintiff's payment to the Chicago, Burlington & Quincy Railway Company of its portion of the earned freight under the joint tariff, denies that she has paid any part of such freight charge, and denies knowledge of any such payment having been made. Defendant, in her answer, by way of affirmative defense, further avers:

"That on or about August 29, 1917, the Wrot Iron Heater Company, of Des Moines, Iowa, shipped to the defendant on consignment the property mentioned and described in the fifth paragraph of the complaint on file. That this defendant never ordered or purchased any of the property, and was never the owner thereof, but that said Wrot Iron Heater Company shipped said described property to defendant, for the purpose of having defendant sell the same on their account, retaining title thereto in its own name, and agreed to pay all freight charges that might accrue or be charged by any of the railway companies for carrying said property as freight, and this defendant never at any time entered into any contract or agreement with the plaintiff, or with the Chicago, Burlington & Quincy Railroad Company, for the transportation of said property, and had no knowledge as to any contract made and entered into between the Chicago, Burlington & Quincy Railroad Company, or the plaintiff, concerning said shipment or the rate to be charged, and had no knowledge or information concerning the contents of the bill of lading under which said property was shipped, and this defendant never requested the said plaintiff, or the Chicago, Burlington & Quincy Railroad Company, to deliver said property to this defendant, nor any part or parcel thereof, and is under no obligation to pay the charges, if any, alleged to be due for the shipment thereof from Des Moines, Iowa, to Tacoma, Wash."

The plaintiff now demurs to the answer and to the affirmative defense. Upon the hearing, the sufficiency of the latter defense has alone been argued and considered.

The exact question involved may, perhaps, best be stated by the following quotation from defendant's brief:

"The point raised by the plaintiff's demurrer to the defendant's affirmative defense in this case is this: Can a consignee, who is not at any time the owner of the goods shipped, who has not agreed with either the shipper or the carrier that he will pay the freight, who accepts the goods upon the carrier's representation that the freight has been prepaid, be bound by such acceptance to pay the freight?

"The general rule is stated at 10 C. J. 445, 446, as follows: 'There is no contractual relation between the carrier and the consignee, by the mere designation of the latter as consignee, which obligates him to receive the goods or pay the freight charges, and he is not liable therefor in the absence of agreement express or implied,' citing New Jersey Central R. Co. v. MacCartney, 68 N. J. Law. 165, 52 Atl. 575.

"As the answer clearly sets forth, whatever freight was paid was paid by the shipper; the contract between shipper and carrier was that freight was to be paid in advance. The railroad company accepted from the shipper what it believed to be the correct freight. The goods arrived at Tacoma, and were voluntarily delivered by the plaintiff to the defendant. Nothing was said about freight charges. Clearly, the defendant was not, up to the time of delivery, obligated in any way, either to shipper or carrier, to pay the freight. Can the mistake of the railroad company put her in a worse position? Can the plaintiff persuade her to accept the shipment by representing that the freight is prepaid, and then collect it from her?

"It is expressly alleged in the answer, and must be accepted as true for the purposes of demurrer, that the defendant was not at any time the owner of the shipment. She cannot, therefore, be held liable on the theory that, as consignee, she was presumptively the owner, and that, by accepting delivery, she authorized the plaintiff to treat her as the actual owner."

It has been held:

"It is alleged that a different rule should be applied in this case, because Fink, by virtue of his agreement with the consignor, did not become the owner of the goods until after the same had been delivered to him. There is no proof that such agreement was known to the carrier, nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods. Pennsylvania R. Co. v. Titus, 216 N. Y. 17, 109 N. E. 857, L. R. A. 1916E, 1127, Ann. Cas. 1917C, 862. Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. New York, New Haven & Hartford R. R. Co. v. York & Whitney Co., 215 Mass. 36, 40, 102 N. E. 366." Pittsburgh, etc., Ry. Co. v. Fink, 250 U. S. 577, at pages 582 and 583, 40 Sup. Ct. 72, 63 L. Ed. 1151.

In reaching a conclusion on this question and the effect of the foregoing decision, it is important to keep in mind the nature of the mistake made by the carrier and consignee. In the present case, as in the above case, the mistake here made was not one of law, but of fact. At the time of the delivery of the freight in question the carrier had a lien, despite the mistake made in delivering it. In delivering and surrendering the goods to the consignee, plaintiff lost its lien thereon. While the mistake of the carrier and consignee may not have been in all things mutual, they were mutually mistaken in acting in the belief that the freight charges had been fully paid.

The legal rate is the posted and published rate. It was that of which the consignee was obliged to take notice. The mistake as between the rate asked and the legal rate (the filed and posted tariff rate) is a mistake of fact—the consignee not knowing that the posted and published rate was higher than that paid by him. Therefore the decision would

appear controlling of the present cause, for, if the doctrine of estoppel cannot be invoked, where the consignee paid the demanded rate, thinking it was the filed and posted rate, the carrier thereby losing its lien for the unpaid portion of the freight, it is not perceived why the consignee, in receiving the goods, acting under a mistaken belief that the shipper had fully paid the freight, can do so. It may be argued that there is no analogy between the two stated cases, as the world is bound by the posted and published rate, while the consignee is not bound to know whether it has been fully paid or not. But the distinction is more apparent than real.

The consignee, in refusing payment, is relying on the plaintiff's being estopped by its conduct. The shipper, the carrier, and the consignee are all agents and trustees for the public, and no complications arising out of the agreements between them, or shuffling, should defeat the purpose of the act requiring the full and exact payment of the freight as fixed by the filed, posted, and published tariff.

The railroad, suing in its interest, alone, might be estopped; but, in suing under the statute, it is suing as a trustee for the protection of the public. The public, in whose interest, as well as its own, the carrier has a lien on the undelivered freight for the full rate, is not estopped, because it did no act and made no representation on which the consignee relied, and, when the consignee accepted the goods, it deprived the public of that lien. It follows that the consignee, because of such act, still remains liable to the carrier, who sues in the public's interest, for the value of the right destroyed.

Demurrer to the affirmative defense sustained.