COMMONWEALTH vs. BOSTON & MAINE TRANSPORTATION COMPANY.

SAME vs. DANIEL L. REARDON.

SAME vs. SAME.

Suffolk. January 9, 1933. — March 29, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*Motor Vehicle*, Sight-seeing bus. *Carrier*, Of passengers: by motor bus. *Constitutional Law*, Equal protection of laws. *General Court*.

It is within the power of the General Court to delegate to the police commissioner of Boston and to the department of public utilities the powers conferred upon them, respectively, by St. 1931, c. 399.

St. 1931, c. 399, as applied to a motor bus whose owner, without having complied with the requirements of the statute and pursuant to a contract, furnished it on a single occasion for a stipulated consideration to transport members of a convention, without other passengers, from a hotel in Boston over the highways to nearby places in the Commonwealth of historical interest and back to the hotel, and furnished with the bus a driver and a guide who, outside of Boston, pointed out places of interest and gave descriptive and historical information to the passengers, did not deny the equal protection of the laws to the owner of the bus in violation of the Constitution of the United States and the Constitution of this Commonwealth, assuming that the owner in these circumstances was acting as a private carrier.

Said statute, in the circumstances above described, could not properly be attacked on the ground that it converted the owner of the bus from a private carrier into a common carrier.

In the circumstances above described, the driver of the bus, who was not licensed in accordance with the requirements of said c. 399, was not deprived of his right to the equal protection of the laws by being held amenable to the statute, even though he had been employed to operate other motor buses of the owner on regular routes and at such other times and places as the owner might direct.

THREE COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston, the first two on July 16, 1931, and the third on July 17, 1931.

The first complaint charged the defendant with the operation of five sight-seeing buses which were not licensed

as required by law and for which the defendant had not secured a certificate of public convenience and necessity from the department of public utilities. The second complaint charged the defendant with operating one of such automobiles. The third complaint charged the defendant with operating a sight-seeing automobile without his having been licensed to do so as required by law.

Upon appeal to the Superior Court, the defendants waived trial by jury; and the complaints were heard together by *Williams*, J., upon agreed statements of facts. Material facts are stated in the opinion. The defendants were found guilty on each complaint. The judge reported the complaints for determination by this court.

*R. W. Hall*, for the defendants.

*F. T. Doyle*, Assistant District Attorney, for the Commonwealth.

RUGG, C.J. These two cases were submitted upon an agreed statement of facts and trial by jury was waived. The defendants were found guilty, fines were imposed, and with the consent of the defendants the cases were reported. G. L. (Ter. Ed.) c. 278, § 30. *Commonwealth* v. *Surridge*, 265 Mass. 425, 426.

The material facts are these: The corporate defendant, pursuant to contract, furnished on July 9, 1931, five sight-seeing automobiles, commonly known as buses, exclusively to transport members of a convention from a hotel in Boston over the highways of the Commonwealth to Lexington, Concord, the Wayside Inn, and back to the hotel. The charge was a fixed price for each automobile irrespective of the number of persons transported or the time spent on the trip. These automobiles were under control of members of the convention save as to actual operation. The corporate defendant sold no tickets, took no passengers other than members of the convention, and derived no revenue from the transaction except the stipulated price per automobile. The corporate defendant furnished for each automobile a driver and a guide who, outside of Boston, pointed out places of interest and gave descriptive and historical information to the passengers. No one of these motor ve-

hicles was licensed to operate as a sight-seeing automobile. The department of public utilities had not issued certificates that public necessity and convenience required such operation. No one of the sight-seeing automobiles used on this occasion was habitually engaged in travelling over the stipulated route, but each was a spare bus of the defendant rented for the particular trip. The individual defendant was an employee of the corporate defendant: acting under its directions, he operated one of the sight-seeing automobiles on the trip in question without having a license therefor.

Each defendant is charged with violation of St. 1931, c. 399. By § 1 a sight-seeing automobile is defined as a motor vehicle "used for the carrying for a consideration of persons for sight-seeing purposes in or from the city of Boston and in or on which automobile guide service by the driver or other person is offered or furnished."

Section 2 is in these words: "It shall be unlawful for a person or a corporation to offer or furnish service by a sight-seeing automobile in or from the city of Boston unless said automobile is licensed hereunder and unless a certificate of public convenience and necessity is obtained as hereinafter provided, and it shall be unlawful for a person to operate such an automobile as driver in or from said city unless he is licensed so to do as hereinafter provided." By other sections exclusive authority is vested in the police commissioner of Boston to grant the licenses for operators, and in the department of public utilities to grant certificates of public necessity and convenience as to offering or furnishing service by sight-seeing automobiles. There is in § 3 a schedule of fees to be charged for licenses of owners of sight-seeing automobiles, providing that the fees shall not be less than those established for hackney carriages and shall not exceed sums ranging from $10 for such automobile designed to carry not more than twelve persons to $50 for those designed to carry more than twenty-four persons.

It is apparent that the transactions on which these complaints rest had their beginning and end within the Commonwealth. The contract for transportation was made in this Commonwealth. The route of the sight-seeing auto-

mobiles was wholly over highways within the Commonwealth. The transportation, both as to passengers and motor vehicles, was entirely intrastate. That the General Court has power to exercise reasonable control over motor vehicle travel on highways is settled. It may require licenses for operators of motor vehicles engaged in local or domestic carriage. *Commonwealth* v. *Potter,* 254 Mass. 271. It may constitute licenses subject to reasonable conditions a prerequisite to such operation of motor vehicles. *Commonwealth* v. *Slocum,* 230 Mass. 180. *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95. It may forbid any person to operate duly licensed motor vehicles as common carriers of passengers without having also obtained a certificate from a public board or officer declaring that public necessity and convenience require such operation. The intrastate business of common carriers of passengers by motor vehicle is subject to extensive regulation under the authority of the Legislature. *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240. *New York Central Railroad* v. *Conlin Buss Lines, Inc.* 258 Mass. 498, 500. *Roberto* v. *Department of Public Utilities,* 262 Mass. 583. *Interstate Busses Corp.* v. *Holyoke Street Railway,* 273 U. S. 45, 49, 52. Automobiles may under legislative authority be wholly excluded from particular highways. *Commonwealth* v. *Kingsbury,* 199 Mass. 542. *State* v. *Mayo,* 106 Maine, 62. *People* v. *Rosenheimer,* 209 N. Y. 115, 120. *Hodge Drive-It-Yourself Co.* v. *Cincinnati,* 284 U. S. 335, 337. In exercising its authority over highways the General Court is not limited to the raising of revenue or to regulations as to the manner of operation of motor vehicles. It may employ reasonable means to prevent wear and to ameliorate the hazards due to size and weight of load. *Sproles* v. *Binford,* 286 U. S. 374, 388. It may adopt every reasonable measure to promote safety of travel upon public ways. *Opinion of the Justices,* 251 Mass. 569, 595–600. "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes; and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may pro-

hibit or condition as it sees fit." *Stephenson* v. *Binford,* 287 U. S. 251, 264.

There is no doubt of the power of the General Court to delegate to the police commissioner of Boston and to the department of public utilities the powers conferred by St. 1931, c. 399. *Commonwealth* v. *Slocum,* 230 Mass. 180, 190. *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 171, and cases collected. *Roberto* v. *Department of Public Utilities,* 262 Mass. 583, 587. *Sproles* v. *Binford,* 286 U. S. 374, 397.

There is nothing in the record to show that the defendants ever engaged in transportation of passengers by sight-seeing automobile except on this single occasion. That transportation was by virtue of a special contract and was solely for the members of the particular convention, and not for the general public. The consideration was based not on the number of persons carried but on the number of sight-seeing automobiles furnished. It is assumed that, so far as possible in the nature of things, the corporate defendant was acting as a private carrier and not as public carrier in transporting these considerable numbers of human beings. If it had been transporting merchandise, it would doubtless have been a private carrier. *Smith* v. *Cahoon,* 283 U. S. 553.

The statute by § 5 confers upon the department of public utilities power to attach to the exercise of the privilege, conferred by the certificate of public necessity and convenience, conditions as to operation and fares and to make "reasonable rules, orders and regulations governing the operation and fares of sight-seeing automobiles carrying persons in or from the city of Boston." Commonly the fixing of rates for transportation of goods or of passengers by legislative authority is confined to public carriers and does not extend to private carriers. *Michigan Public Utilities Commission* v. *Duke,* 266 U. S. 570, 576, 578. *Frost & Frost Trucking Co.* v. *Railroad Commission of California,* 271 U. S. 583, 592. *Smith* v. *Cahoon,* 283 U. S. 553, 562–563.

There are other factors to be considered in determining

whether the constitutional rights of the defendants will be invaded by holding them subject to the statute. Sight-seeing automobiles "commonly known as buses" are large, cumbersome and heavy motor vehicles. The streets in parts of Boston are notoriously narrow and crooked. The route from Boston to Lexington, Concord and the Wayside Inn and return lies in large part over main arteries of heavy travel. It also lies through towns and by places possessing great historic attractions to lovers of our country, and where there are monuments and public buildings and institutions of surpassing general interest. Dwellings occupied in times past by many famous in literature, education and statecraft are to be seen. During the summer, tourists and residents in large numbers travel over the whole or parts of this route. These are matters of common knowledge of which the court takes cognizance. Sight-seeing automobiles accommodating the number of passengers shown on this record, when accompanied by a guide or "lecturer" whose duty after leaving Boston was to "point out the places of interest and lecture," might well be thought to tend to some extent to the congestion of traffic on the highways. Their presence and their variations in speed to enable passengers to view the places pointed out, and the lecturing, might be regarded as features contributing to that result. The safety of the passengers and that of the public in general may be thought to be promoted by requiring the owners of such a sight-seeing automobile to be under public regulation to the degree required by compliance with the statute. All these considerations seem to us to affect the transactions here in issue with a public interest and to render them subject to the terms of the statute.

The binding authority of *Smith* v. *Cahoon*, 283 U. S. 553, and the cases there cited, is recognized to the effect that the Legislature cannot convert a private carrier of merchandise into a common carrier. The statute here assailed does not seem to us to fall under that condemnation. As applied to these defendants, it relates to a matter of such public concern touching the safety of travel on

the highways that the regulations imposed are within the domain of the General Court. We think that the corporate defendant is not by the statute converted into a common carrier of passengers. The decision in *Terminal Taxicab Co. Inc.* v. *Public Utilities Commission of California,* 241 U. S. 252, as to its private automobile service, seems to us quite distinguishable. In that case no guide service was provided and no sight-seeing automobiles such as here are displayed.

The reasons already stated lead to the conclusion that the defendants are not deprived of the equal protection of equal laws. That principle is fundamental under the Constitutions of both the Commonwealth and the United States. A necessary corollary of that principle is that reasonable classification is not discrimination and does not create inequality before the law. *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 337–341, and cases collected and reviewed. *Commonwealth* v. *Higgins,* 277 Mass. 191. *New York* v. *Zimmerman,* 278 U. S. 63, 72, 73, 75. *Silver* v. *Silver,* 280 U. S. 117, 123–124. *Carley & Hamilton, Inc.* v. *Snook,* 281 U. S. 66, 73. *Sproles* v. *Binford,* 286 U. S. 374, 396. The statute here attacked applies only to sight-seeing automobiles carrying people for hire in or from Boston in or on which "guide service by the driver or other person is offered or furnished." That classification cannot in our opinion be pronounced unreasonable. It may have been thought desirable in such cases to require license and certificate to the end that competent guide service might be assured. The service of a guide may also have relation to considerable variations in the speed of the automobile at places where other travellers would be inconvenienced, to interference with other traffic on the highway, and to causing the attention of other travellers to be diverted, and thus the danger to all upon the highway enhanced. *Commonwealth* v. *Libbey,* 216 Mass. 356. *Brest* v. *Commissioner of Insurance,* 270 Mass. 7. *Bain Peanut Co. of Texas* v. *Pinson,* 282 U. S. 499. *Continental Baking Co.* v. *Woodring,* 286 U. S. 352.

The statute is not so arbitrary or unreasonable as to be repugnant to rights secured by the Constitution of the

Commonwealth or by the Fourteenth Amendment to the Federal Constitution. The defendants do not appear to have made any attempt to conform to the statute. The minimum fee permissible under the statute is small. It cannot be presumed that the fares would have been established at an unreasonable rate. No assumption can be indulged in favor of the defendants to the effect that they would not have been fairly treated if they had tried to comply with the statute.

The cases at bar as to every point raised under the Federal Constitution seem to us to be within the protecting authority of *Hodge Drive-It-Yourself Co.* v. *Cincinnati,* 284 U. S. 335; *Sproles* v. *Binford,* 286 U. S. 374, and *Stephenson* v. *Binford,* 287 U. S. 251.

The circumstance that the individual defendant had been employed to operate motor vehicles known as motor buses for the corporate defendant on its regular routes and at such other times and places as it might direct does not show that the statute violates his constitutional rights. He was operating this particular sight-seeing automobile, which in our opinion was being operated contrary to law. He had no license for that purpose. He therefore was amenable to the statute. *Commonwealth* v. *Potter,* 254 Mass. 271.

In each case the entry may be

*Judgment affirmed.*