## STEELE *v.* GENERAL MILLS, INC.

No. 79. Argued December 18, 1946.—Decided January 6, 1947.

*Cecil A. Morgan* argued the cause for petitioner. With him on the brief was *T. S. Christopher.*

*Alfred McKnight* argued the cause for respondent. With him on the brief were *Charles E. France* and *Ira Butler.*

By special leave of Court, *Elton M. Hyder* argued the cause for the State of Texas as *amicus curiae.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner and respondent entered .into a written contract under which the petitioner was to transport goods for respondent by truck entirely within the State of Texas at

"such rates, charges or tariffs as may be fixed by the Railroad Commission of the State of Texas." Based on that contract petitioner applied to the Commission for a permit to operate as a contract carrier pursuant to rules of the Railroad Commission promulgated under Texas law which grants regulatory power over transportation to that Commission. Article 911b, §§ 1 to 22 (b), Rev. Stat. of Tex. Petitioner's application stated that "the tariff to be charged for the service proposed to be rendered will be that as promulgated by the Railroad Commission of Texas." After notice and hearing, at which petitioner and a representative of respondent testified, the Commission made an order which stated that "after carefully considering the evidence, the laws and its own rules and regulations," the Commission was of the opinion that "the character of business proposed to be done by the applicant strictly conforms with the definition of a contract carrier." The order directed that petitioner be granted a permit, which was later issued, to transport goods for respondent in Texas, but directed attention to the fact that the Commission's "tariffs and orders prescribed as a minimum rate to be charged by contract carriers the rates prescribed for common carrier motor carriers." Later, pursuant to a prearrangement, the parties entered into a supplemental agreement concerning which the Railroad Commission was kept uninformed, in accordance with which respondent actually paid petitioner for carriage of its goods less than the rates prescribed for common motor carriers. About three and a half years later the petitioner filed this suit, of which the District Court had jurisdiction by reason of diversity of citizenship, to recover the difference between the rate paid and the full rate fixed by prior general orders of the Commission prescribing common carrier rates as provided in the contract.

The respondent's answer admitted that it had paid less than the tariff rate fixed in prior general orders, but denied

legal liability to pay that rate on several grounds. It denied that respondent's rates were governed by the Commission's prior general rate orders or by the special order granting petitioner a permit as a contract carrier. It also claimed that a state two-year statute of limitations barred recovery for part of the amount claimed. It further alleged that petitioner had led respondent to believe that his type of transportation was not subject to regulation by the Railroad Commission, and that no prior general or special orders had fixed petitioner's transportation rates. In reliance upon the petitioner's representations, respondent alleged, it had entered into the supplemental agreement to pay less than the tariff rate here claimed. Respondent pleaded that by this conduct petitioner was estopped from claiming that the Commission had power to or had fixed a rate for petitioner's transportation, or from predicating his cause of action upon the Commission's tariffs.

The District Court rejected all of respondent's contentions. Citing Texas statutes, court decisions, and the Commission's practices, the District Court held that the cause of action was not barred by the statute of limitations; that the Commission's prior general rate orders governed the charges to be fixed by contract carriers such as petitioner; that Texas law barred respondent from any collateral attack on the validity of the orders; that had the rate-fixing orders been directly attacked, as authorized by law, they would have been held valid; that shippers and carriers could not by private agreements defeat the State's statutory purpose to require payments of uniform transportation rates; that the original agreement to pay the Commission-fixed rate was valid, and the supplemental agreement to pay less than that rate was void; and that, under Texas law, petitioner was not estopped to rely on the Commission's tariff in order to recover the full

tariff rate. Accordingly, the District Court directed the jury to return a verdict for petitioner for the balance due it under the Commission rate, and a judgment for the petitioner was entered on that verdict.[1]

The Circuit Court of Appeals, one judge dissenting, reversed. 154 F. 2d 367. The majority concluded that petitioner should not recover because the agreement to pay less than the full rates was a subterfuge, that neither party had any intention of living up to the agreement, and that their conduct amounted to a fraud upon the Railroad Commission, "contrary to good morals and that [it] tended . . . to interfere with the purity of the administration of the law such as puts both parties *in pari delicto* with no right to seek advantage or recovery . . ." on the "spurious" contract. The dissenting judge did not agree that the records showed a deliberate purpose to evade the statutes. He further thought that under controlling Texas law and policy the doctrine of *pari delicto* could not be applied so as to have the goods of a Texas shipper hauled in Texas at a less rate than the others were compelled to pay by law. All the judges agreed, however, that the agreement to pay less than the Commission-fixed rates was void.

---

[1] The court permitted respondent to offer evidence intended to show that the petitioner's contract carriage was neither in competition with common carriers nor substantially the same type of services as common carriers performed. This evidence was offered to support respondent's contention that the Commission was without jurisdiction to fix petitioner's rates because, as respondent urged, § 6 aa of the State motor carrier law limited its power to fix contract carrier rates to motor carriers that did compete with or perform substantially the same services as common carriers. These two questions were submitted to the jury, and they made special findings on the issues in respondent's favor. The district court later directed the jury to find for petitioner despite these findings, holding, as set out in the opinion, that the Commission's orders were valid and beyond collateral attack in this case.

On petitioner's motion for rehearing, the State Attorney General intervened. He contended that the court's decision ran counter to the State's long-established policy against discriminatory transportation rate-cutting, and that if the judgment stood, it would impair the integrity of the State's regulatory system, a primary purpose of which was, he argued, to assure uniform rates to all shippers for substantially the same transportation service. In its opinion denying rehearing, the court reaffirmed its former holding and stated that this was "a suit by one party, *in particeps criminis*, against another in like situation, under a fully completed contract, wherein it was sought to penalize one party to the extent of $37,000.00 and to reward the prime offender in like amount." Whether the Circuit Court of Appeals' judgment does undermine the transportation policy of Texas is a question of such importance that we granted certiorari to review the case. 328 U. S. 830.

The District Court specifically held that no part of the claim sued on was barred by the Texas statute of limitations and the Circuit Court of Appeals did not discuss the question. Article 5526 of the Revised Statutes of Texas, on which respondent relies, by its language applies only to actions for debts not "evidenced by a contract in writing." The contract here sued on was "in writing." Respondent has cited no Texas decisions which have considered this statute to be a bar to suits on contracts such as the one here involved. We cannot say that the District Court sitting in Texas erred in holding that no part of the claim was barred by Article 5526. See *Texarkana & Ft. S. R. Co.* v. *Houston Gas & Fuel Co.*, 121 Tex. 594, 51 S. W. 2d 284.

Nor can we say that the District Court and the Circuit Court of Appeals erred in interpreting Texas law to render the supplemental agreement between petitioner and respondent, designed to circumvent payment of Commission-fixed rates, void and unenforceable. The District

Court's holdings that the Commission's rate-fixing orders applied to petitioner's business, that they were not subject under Texas law to the collateral attack here made, and that petitioner could not carry respondent's goods at less than the rates fixed were well buttressed by state statutes and court decisions.[2]  No arguments here made by respondent, or state decisions on which it relies, refute the District Court's reasoning or conclusion.  The Circuit Court of Appeals has not disagreed with this holding·of the District Court sitting in Texas.  Under these circumstances we shall leave undisturbed the interpretation placed upon purely local law by a Texas federal judge. *MacGregor* v. *State Mutual Life Assurance Co.*, 315 U. S. 280; *Henderson Co.* v. *Thompson,* 300 U. S. 258, 266; *Thompson* v. *Consolidated Gas Co.,* 300 U. S. 55, 74–75. Therefore we can proceed to consider whether the Circuit Court erred in holding that respondent could escape payment of the Commission-fixed rates by application of the doctrine of *pari delicto*.

Respondent does not refute what the Texas courts have frequently decided, that agreements by railroads to cut charges to below tariff rates are unlawful and that no doctrine of estoppel or *pari delicto* can be invoked to defeat payment of the full tariff rate.  In *Texas & N. O. R. Co.* v. *Yates,* 139 Tex. 89, 93, 161 S. W. 2d 1050 , 1052, the Texas court said, "In a word the purpose of our statutes,

---

[2] The District Court cited the following authorities to support its position: Art. 911b Rev. Stat. of Tex.; General Order No. 25, R. R. Comm'n of Tex., Aug. 22, 1931; *Texas Steel Co.* v. *Ft. Worth & Denver C. R. Co.,* 120 Tex. 597, 40 S. W. 2d 78; *Greer* v. *Railroad Comm'n* (Tex. Civ. App.) 117 S. W. 2d 142; *St. Louis, I. M. & S. R. Co.* v. *Landa & Storey* (Tex. Civ. App.) 187 S. W. 358; *Railroad Comm'n* v. *Uvalde Construction Co.* (Tex. Civ. App.) 49 S. W. 2d 1113; *Alpha Petroleum Co.* v. *Terrell,* 122 Tex. 257, 59 S. W. 2d 364; *Mingus* v. *Wadley,* 115 Tex. 551, 285 S. W. 1084.  It also cited the following federal cases: *Burford* v. *Sun Oil Co.,* 319 U. S. 315; *United Fuel Gas Co.* v. *Railroad Comm'n,* 278 U. S. 300.

as they relate to intrastate freight rates, is in every essential respect the same as that of the Federal statutes which we had under consideration in Houston & T. C. R. Co. v. Johnson, Tex. Com. App., 41 S. W. 2d 14, 83 A. L. R. 241." Just as 49 U. S. C. § 41 (3) prohibits rebate and similar devices which might undermine interstate transportation rate systems, so Art. 1690 (b), § (i) of the Penal Code of Texas makes it unlawful for motor carriers to charge less than Commission-fixed rates, and Art. 1687 makes it unlawful for railroads to engage in the same practice. No Texas decisions referred to by the Circuit Court of Appeals or by the respondent here indicate that the State's public policy is any different or less effective in protecting the integrity of motor carrier rates than railroad rates. The Texas motor carrier legislation was designed to be a part of a state transportation regulatory system applicable alike to all lines of transportation which represents a "studied effort . . . to prevent, through regulation, unfair, discriminatory, or destructive competition between such authorized carriers as would ultimately impair their usefulness." *Texas & Pacific R. Co.* v. *Railroad Comm'n* (Tex. Civ. App.) 138 S. W. 2d 927, 931, reversed on other grounds, 138 Tex. 148, 157 S. W. 2d 622. *Cf. Stephenson* v. *Binford,* 287 U. S. 251, 272–273.

Under Texas law the payment of Commission-fixed carrier rates is not merely a private obligation between shippers and carriers. The duty to pay is a public one, *Houston & T. C. R. Co.* v. *Johnson* (Tex. Com. App.) 41 S. W. 2d 14. And, as said in the *Yates* case, *supra,* with reference to a railroad, no carrier can "by means of estoppel 'or by any other device' escape the performance of this public duty." While the doctrine of *pari delicto* might be applied in Texas to some types of contracts so as to defeat recovery, see *Wright* v. *Wight & Wight* (Tex. Civ. App.) 229 S. W. 881, we are satisfied that the Circuit Court of

Appeals erred in holding that Texas courts would apply it in this case. Application of the doctrine of *pari delicto* in this proceeding, therefore, where the federal court has jurisdiction by reason of diversity, would result in applying a rule of law in the federal courts different from the rule we believe has been applicable in the state courts. Such a result cannot be approved. *Holmberg* v. *Armbrecht,* 327 U. S. 392.

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed. It is so ordered.

*Reversed.*