MT. TOM MOTOR LINE, INC. *vs.* McKESSON & ROBBINS, INC.

Hampden.    September 21, 1949. — November 22, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Carrier,* Contract carrier, Common carrier. *Evidence,* Relevancy and materiality. *Practice, Civil,* Auditor: recommittal, motion for judgment on report; Appeal.

A carrier of property by motor vehicle, who held common carrier certificates from the department of public utilities, but not a contract carrier permit, and who carried goods for a certain shipper pursuant to a separate executory contract with him and billed him at the agreed rates according to delivery slips, without issuing any documents with reference to any shipment, properly was found to be a contract carrier respecting that shipper.

G. L. (Ter. Ed.) c. 159B, § 7 (c), as appearing in St. 1938, c. 483, § 1, did not entitle a carrier of property by motor vehicle, who in dealing with a certain shipper acted as a contract carrier without having a permit to do so from the department of public utilities or filing a schedule of rates as such, to recover from that shipper the difference between rates charged and paid pursuant to the parties' contract and higher rates for equivalent carriage appearing in a tariff filed with the department by the carrier as a common carrier holding certificates as such.

Evidence of an arrangement in effect for a number of years between a shipper and a carrier of property by motor vehicle, and of a continuance of such arrangement by the shipper and a second carrier after the second carrier had succeeded to the business of the first, was relevant on the issue whether the second carrier was a common carrier or a contract carrier in his dealings with that shipper.

In an action heard by an auditor whose findings are final, an appeal does not lie to this court from denial of a motion to recommit to the auditor or from denial of a motion for judgment on his report.

CONTRACT.    Writ in the Superior Court dated August 19, 1946.

The action was heard by *Donnelly,* J., upon an auditor's report.

*C. E. Drapeau,* for the plaintiff.

*R. T. King,* for the defendant.

RONAN, J. This is an action of contract to recover additional payment for the transportation and delivery of the defendant's goods from January 2, 1944, to August 21, 1946. The plaintiff appealed from the denial of its motion to recommit the report of an auditor whose findings were to be final, from the denial of its motion for judgment on the auditor's report, and from the ordering of judgment for the defendant.

The defendant, a large manufacturer and distributor of drugs, has a branch office, warehouse and salesroom in Springfield, and since 1931 and up to January 2, 1944, it had engaged one Ertel, doing business under the name of Sauer's Express, to deliver merchandise the defendant had sold to retail drug stores in Hampden and Hampshire counties, paying him at different rates for deliveries made in three different zones or districts into which these counties were divided depending upon their respective distances from the defendant's place of business. The plaintiff, having purchased Ertel's business in December, 1943, notified Ertel's customers, including the defendant, and sought the continuance of their business. It began to make deliveries for the defendant on January 3, 1944, the first business day after it had taken over Ertel's business, and conducted the business in the same manner as had Ertel, receiving the same rate of compensation as had been paid to him until March 30, 1944, when by mutual consent the rates were increased and continued until the parties ceased to do business with each other in August, 1946. The department of public utilities issued on January 4, 1944, an irregular route common carrier certificate to the plaintiff, and on January 18, 1944, it approved a transfer to the plaintiff of Ertel's certificate as a regular route common carrier. The plaintiff filed with the department on March 30, 1944, tariffs [1] pertaining to the rates for work done by it for the defendant,

---

[1] "Tariffs" seem to refer to rates filed by common carriers and "schedules" to the rates filed by contract carriers. See G. L. (Ter. Ed.) c. 159B, §§ 6, 7.

to be effective on May 1, 1944, which stated rates higher than those paid by the defendant. The defendant knew that when the plaintiff began to transport its goods it was necessary for the plaintiff to have a certificate from the department, but it did not know the form of the certificate which had been issued to Ertel or to the plaintiff or the rates filed by the plaintiff; neither did it know that Ertel or the plaintiff never had a permit as a contract carrier. During the period that the plaintiff was transporting goods for the defendant, the plaintiff did business with other shippers charging them different rates both for the delivery of goods and for commissions for collecting the price from customers when cash was paid on delivery. Such collections of cash also were made for the defendant, and they were paid over by the plaintiff's operator to the defendant the day after they were received by him in accordance with the agreement between the plaintiff and the defendant. The moneys so collected did not go through the office of the plaintiff. The auditor found that the plaintiff was acting as a contract carrier in furnishing transportation for the defendant, and that therefore the defendant was not indebted to the plaintiff.

This general finding, which the auditor expressly based upon his subsidiary findings, must stand if supported by such findings together with such inferences as may be properly drawn from them where these findings are not inconsistent with each other and are not vitiated by any error of law appearing on the face of the report. *Galluzzi* v. *Beverly,* 309 Mass. 135. *Mahoney* v. *C & R Construction Co.* 311 Mass. 558, 559. *Benjamin Foster Co.* v. *Commonwealth,* 318 Mass. 190, 193.

The distinction between a common carrier and a private or contract carrier has been frequently stated. *Houle* v. *Lewonis,* 245 Mass. 254. *Haddad* v. *Griffin,* 247 Mass. 369. *Dion* v. *Drapeau,* 254 Mass. 186. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 349. A common carrier is one who holds himself out as furnishing transportation to any and all members of the public who desire such service in so far as his facilities enable him to perform the

service, while a contract carrier does not furnish transportation indiscriminately but furnishes it only to those with whom he sees fit to contract. *Paine Furniture Co.* v. *Acme Transfer & Storage Co.* 290 Mass. 195. *United States* v. *California*, 297 U. S. 175. *Steele* v. *General Mills, Inc.* 329 U. S. 433. *Ace-High Dresses, Inc.* v. *J. C. Trucking Co. Inc.* 122 Conn. 578. *Trudeau* v. *Pacific States Box & Basket Co.* 20 Wash. (2d) 561. This difference is recognized in § 2 of G. L. (Ter. Ed.) c. 159B, as appearing in St. 1938, c. 483, § 1, as amended, the chapter regulating the transportation for hire of goods by motor vehicles. A carrier may be a common carrier as to one part of its business and a special or contract carrier in another part. *Terminal Taxicab Co. Inc.* v. *Public Utilities Commission of the District of Columbia*, 241 U. S. 252. *Commonwealth* v. *Boston & Maine Transportation Co.* 282 Mass. 345, 349. *Rugg* v. *Davis*, 320 Mass. 388, 391. A carrier may be issued a certificate to conduct the business of a common carrier and also a permit to engage in the business of a special or contract carrier. G. L. (Ter. Ed.) c. 159B, § 8.

The holding of a certificate authorizes one to act as a common carrier in accordance with the terms and provisions of the statute, G. L. (Ter. Ed.) c. 159B, § 3, as amended, and he is expected to conduct his business in conformity thereto, but it does not necessarily follow that every transportation of goods is undertaken by him as a common carrier and not as a special or contract carrier, even though in that case the carrier would be subject to the penalty provided by G. L. (Ter. Ed.) c. 159B, § 21. *Rugg* v. *Davis*, 320 Mass. 388. *Sea Ins. Co.* v. *Sinks*, 166 Fed. (2d) 623, 625. *Trudeau* v. *Pacific States Box & Basket Co.* 20 Wash. (2d) 561.

One to whom a certificate has been granted is bound to collect and the shipper to pay the established rates for the service rendered, and neither is excused through fraud, accident, mistake, or any other cause from collecting or paying the said rates. The holder of a permit as a contract carrier is under the same obligation and so is the one for whom the transportation is performed. G. L. (Ter. Ed.)

c. 159B, §§ 6, 7, 19. *Papetti* v. *Alicandro*, 317 Mass. 382. *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 256 U. S. 406. *Steele* v. *General Mills, Inc.* 329 U. S. 433. Where he is in fact acting in the latter capacity, he cannot claim the benefits that would otherwise accrue if he were rendering services as a common carrier. Whether the carrier is acting as a common carrier or a contract carrier depends upon all the circumstances under which the transportation is furnished, and presents a question of fact where the evidence is conflicting. *First National Stores Inc.* v. *H. P. Welch Co.* 316 Mass. 147, 150. *Rugg* v. *Davis*, 320 Mass. 388, 391.

The arrangement which the defendant had since 1931, when Ertel first began to deliver its goods, continued without interruption during the entire period after the plaintiff succeeded to Ertel's business. The plaintiff charged and was paid the same rates as had been previously charged by and paid to Ertel, excepting only that the rates were increased in 1944. On one hand, there is hardly any occasion to make an executory contract with a common carrier as he is bound to furnish transportation in accordance with the provisions of the statute and to demand and collect the rates filed with the department, G. L. (Ter. Ed.) c. 159B, §§ 6, 19, while on the other hand there is necessity for such a contract if the transportation is to be performed by a special or contract carrier. The obligation of a common carrier arises by reason of the nature of its business, while the obligation of the contract carrier arises only from a contract made with the shipper. The executory arrangement which the plaintiff made with the defendant sheds some light upon the question whether the plaintiff was acting as a common or contract carrier.

At the time the plaintiff's employee received goods from the defendant he signed one of the delivery slips, which were made out in duplicate, and left the signed slip with the defendant and retained the other slip when signed by the defendant's customer. These slips were headed "Delivery

receipt. Received from McKesson & Robbins," and then stated the name of the customer and showed the quantity of goods and other details of the shipment. The plaintiff issued no documents with reference to any shipment and billed the defendant weekly, apparently from these receipts. The defendant knew when it began to do business with the plaintiff that the latter had to have some sort of certificate in order to act as a carrier, but it did not know what kind of certificate had been issued to Ertel or the plaintiff and it did not know until June, 1946, when the defendant was first billed for deliveries at the rates shown on the tariffs filed by the plaintiff as a regular route common carrier, that a contract carrier permit had not been issued to Ertel or the plaintiff. In this respect the case resembles *First National Stores Inc.* v. *H. P. Welch Co.* 316 Mass. 147, and *Rugg* v. *Davis,* 320 Mass. 388, where, it having been found that the carrier was acting as a contract carrier, he did not become a common carrier by securing a certificate as such carrier unbeknown to the shipper while he continued to act as a contract carrier.

No contract carrier permit was ever issued to the plaintiff. No copy of any contract with the defendant for transportation as a contract carrier was filed with the department. Nor was any schedule of minimum charges filed by the plaintiff for transportation as a contract carrier. G. L. (Ter. Ed.) c. 159B, § 7. Consequently, we cannot determine what difference, if any, there would be between the rates in any schedule and what the plaintiff was paid by the defendant, although it is plain that the plaintiff in an appropriate action could recover such a difference if one existed. *Papetti* v. *Alicandro,* 317 Mass. 382. *Steele* v. *General Mills, Inc.* 329 U. S. 433.

We do not agree with the plaintiff that, even if it was acting as a contract carrier, in the absence of any schedule of charges filed with the department showing the rates to be charged by it as a contract carrier, it is entitled to recover in accordance with the tariffs filed showing its charges as a common carrier. The plaintiff relies upon G. L. (Ter. Ed.)

c. 159B, § 7 (c).  This subparagraph, after providing for the determination by the department of the charges that may be made by a contract carrier and whether such charges give such a carrier an unreasonable advantage or preference over other motor vehicle carriers, concludes with the statement that "The charges of said contract carriers by motor vehicle for transportation shall in general be no less than those of common carriers by motor vehicle for the same or similar service."  There is nothing here that allows a contract carrier operating without a permit to collect the rates established for common carriers.  The object of the quoted sentence is merely to direct the attention of the department to the legislative purpose that rates shall not be fixed for contract carriers which will unnecessarily injure or impair the business of a common carrier.  A somewhat similar provision is contained in the motor carrier act, U. S. C. (1946 ed.) Title 49, § 318 (a).  *Stephenson* v. *Binford,* 287 U. S. 251, 273.  *Anderson* v. *Thomas,* 144 Ore. 572.  *Public Service Commission of Wyoming* v. *Grimshaw,* 49 Wyo. 158.

The plaintiff filed objections to the auditor's report and also a motion to recommit because of the failure to make certain findings and because the auditor had made erroneous findings based upon inadmissible evidence to which exceptions had been saved, and requested a summary of the evidence introduced before the auditor with reference to those rulings.  The judge apparently on his own motion ordered the auditor to report such evidence.  Upon the coming in of this report, it appeared that the rulings of the auditor upon the evidence were right and that it was proper for him to admit evidence of the arrangement with Ertel, who had transported the defendant's goods for many years and up to the time Ertel sold his business to the plaintiff, and of a continuance of this arrangement after the plaintiff began to transport the defendant's merchandise.  The evidence was competent on the principal issue as to whether the plaintiff was acting as a common carrier or as a contract carrier.  The appeal from the denial of the motion to recommit and the appeal from the denial of the plaintiff's

motion for judgment bring nothing here for review because neither was an "order decisive of the case." G. L. (Ter. Ed.) c. 231, § 96. *Old Mill Point Club, Inc.* v. *Paine*, 308 Mass. 505, 506. These appeals must be dismissed. The granting of the defendant's motion for judgment was right and the order for judgment must be affirmed.

*So ordered.*