**TOM HICKS TRANSFER COMPANY, Inc.,**
**Appellant,**

v.

**FORD, BACON & DAVIS TEXAS INCOR-**
**PORATED, Appellee.**

**No. 8057.**

Court of Civil Appeals of Texas,
Texarkana.

June 27, 1972.

Morgan Nesbitt, James, Robinson, Felts & Starnes, Austin, for appellant.

John A. Mackintosh, Jr., Thompson, Knight, Simmons & Bullion, Dallas, for appellee.

RAY, Justice.

This was a summary judgment proceeding in the District Court of Dallas County. The suit was instituted by appellant Tom Hicks Transfer Company, Inc., against Ford, Bacon & Davis Texas Incorporated, appellee, for freight charges in the sum of $4,769.73. Appellant alleged that it delivered certain machinery by motor carrier from Haltom Manufacturing Company in Dallas to the Shell Oil Company plant in South Louisiana consigned to appellee. Appellee answered by sworn denial that it paid Haltom Manufacturing Company for any applicable freight charges, and that since appellant had delivered the machinery to appellee with bills of lading marked "prepaid," appellant was estopped as a matter of law to collect unpaid freight charges from appellee, although Haltom

Manufacturing Company had not in fact "prepaid" the freight charges.

Both appellant and appellee filed motions for summary judgment based on the affidavits, pleadings and stipulations on file. The District Court of Dallas County entered a no-liability judgment for appellee Ford, Bacon & Davis Texas Incorporated after sustaining appellee's motion for summary judgment and overruling appellant's motion for summary judgment.

The majority of the pertinent facts in this case were stipulated between the parties in the trial court. Over a period of months in 1967, appellee purchased machinery from Haltom Manufacturing Company of Dallas, Texas, and the purchase order for the equipment specified that appellee was to receive the machinery from Haltom Manufacturing Company f.o.b. job site. After delivery, appellee paid Haltom Manufacturing Company in full for the equipment and the applicable freight charges. Consignor Haltom Manufacturing Company contracted with appellant, Tom Hicks Transfer Company, Inc., for the transportation of the heavy equipment to the job site at Shell Oil Company's Bayou Goula refinery in Southern Louisiana. It was stipulated by the parties that on each of the memorandum bills of lading under which the shipments moved, the word "prepaid" had been typed by appellant in the space on the printed form headed "If charges are to be prepaid, write or stamp here: 'To be Prepaid.' " It was stipulated that appellee accepted the shipments of equipment in reliance upon appellant's representations that all freight charges had been "prepaid" by consignor Haltom Manufacturing Company. The true facts were that appellant carrier elected to extend credit to Haltom Manufacturing Company and the freight charges were not "prepaid" as represented. Appellant later sought payment from consignor Haltom Manufacturing Company, but was unable to collect the freight charges. The parties stipulated that Haltom Manufacturing Company was insolvent on the date of the presentation of their respective motions for summary judgment in the trial court. Appellant now seeks recovery of the unpaid freight charges from appellee Ford, Bacon & Davis Texas Incorporated notwithstanding its earlier representation that the charges had already been paid prior to the delivery. Appellee denied liability for the unpaid freight charges and submitted that appellant was estopped to collect such unpaid charges because of its prior conduct in representing to appellee that prepayment had been made by Haltom Manufacturing Company.

Appellant's theory of recovery is that the Interstate Commerce Act, 49 U.S.C.A. Sec. 317, and Uniform Bill of Lading Sec. 7 creates a public duty on the part of the interstate motor carrier to collect its freight charges from the consignee, Ford, Bacon & Davis Texas Inc., notwithstanding the fact that the carrier had previously delivered the equipment to the consignee representing prepayment of the freight charges by the consignor, Haltom Manufacturing Company. Appellee contends that the trial court correctly held that the doctrine of estoppel was applicable, and that public policy and the provisions of the Federal Statutes do not require appellee to pay the freight charges twice (once to the consignor and once to the carrier).

Insofar as we have been able to determine, this is the first Texas decision construing the Interstate Motor Carrier Section of the Interstate Commerce Act, 49 U.S.C.A. Secs. 317 and 323, concerning whether those sections and public policy demand that the freight charges be collected from the consignee when the merchandise was shipped by the consignor via motor carrier by bill of lading stamped "Prepaid" when such charges are uncollectible from the consignor.

Appellant contends that the trial court erred in failing to require the consignee, Ford, Bacon & Davis Texas Inc., to pay the applicable freight charges upon failure of the shipper to pay such charges, even though the shipments were marked "Pre-

paid." Appellant further contends in its point of error No. 2, that as a matter of law, a consignee cannot accept delivery of an interstate shipment without incurring liability for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise.

The applicable provisions of the Interstate Commerce Act, 49 U.S.C.A., provide the following:

"Sec. 317(b) No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs: . . . ."

"Sec. 317(d) No common carrier by motor vehicle, unless otherwise provided by this chapter, shall engage in the transportation of passengers or property unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter."

The pertinent part of Section 7 of the Uniform Bill of Lading provision is as follows:

"The owner or consignee shall pay the freight and average if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges. Provided, That, where the carrier has been instructed by the shipper or consignor to deliver said property to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of said property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in said property, and (b) prior to delivery of said property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, . . . ."

Sec. 323 of 49 U.S.C.A. provides in part as follows:

"No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice. . . . ."

Appellant contends that both the shipper and the consignee are equally liable for freight charges and that the carrier may

collect from either. The transfer company further states that the shipper's obligation to pay the freight charges is incurred when he tenders the shipment to a carrier at the origin point accompanied by shipping instructions, and that only one way exists to avoid this liability, and that is by the execution of the so-called "no recourse" clause of Sec. 7 of the Bill of Lading terms. Appellant urges that the consignee's obligations to pay the freight charges become absolute when it accepts the shipment from the carrier at destination and that the law permits only one way to avoid that liability, which is by notifying the carrier in advance of delivery that the consignee is acting solely as an agent for someone else. The carrier submits that this conclusion is a proper interpretation of Sec. 7 of the Bill of Lading and is also inferred by the provisions of 49 U.S.C.A. Sec. 323. Appellee disputes these contentions and states that it had no part in making the arrangements for shipment, nor did it contract with appellant-carrier for the transportation. Appellee claims that it had a right to rely on the representation contained in the bill of lading stating that all freight charges had been "Prepaid" by consignor, Haltom Manufacturing Company, and that the carrier is now estopped to deny that the consignor failed to pay the freight charges as represented. Further, it is urged by appellee that since appellant-carrier elected to extend credit to the consignor it took the risk of not getting paid. Also, it states that it should not have to pay twice for the freight charges because it had already paid Haltom Manufacturing Company for the merchandise and the cost of shipping the goods to appellee, and that appellant could have taken precautions to get its money.

There are no Texas motor carrier cases interpreting 49 U.S.C.A. Secs. 317 and 323 and the rail transportation cases concerning this same matter are in conflict, as well as the one water carrier case.

Appellant cites as authority for its position the case of Missouri Pacific Railroad Company v. Phelan Company, 444 S.W.2d 832 (Tex.Civ.App. Beaumont 1969, err. dism'd); Houston & T. C. R. Co. v. Johnson, 41 S.W.2d 14 (Tex.Civ.App.1931); Northern Transportation v. Harbor Box, 8 Fed.Car. cases, para. 80,638 (D.C.—Cal. 1951); National Van Lines, Inc. v. Herbert, 81 S.D. 633, 140 N.W.2d 36 (1966); and Great Northern Ry. Co. v. Hyder, 9 Cir., 279 F. 783–786.

Appellant quotes from Northern Transportation v. Harbor Box, supra, the following:

"Apparently someone has to pay the freight and if the consignor does not do so, the consignee must pay notwithstanding that he was presented with a prepaid bill of lading at the time of delivery. The carrier issued the prepaid bill of lading on credit extended to the consignor. The consignor failing to meet his obligations, the carrier now falls back on the consignee.

"The weight of authority favors plaintiffs' position and holds that someone has to pay the freight. The carrier must not lose notwithstanding credit was improvidently extended to the consignor.

"Though there is no controlling authority in this Circuit, the weight of authority favors plaintiff's position. I believe, however, that Judge Cushman in Great Northern Ry. Co. v. Hyder, 9 Cir., 279 F. 783–786, states the correct but harsh rule when he says:

"'The consignee, in refusing payment, is relying on the plaintiff's being estopped by its conduct. The shipper, the carrier, and the consignee are all agents and trustees for the public, and no complications arising out of the agreements between them, or shuffling, should defeat the purpose of the act requiring the full and exact payment of the freight as fixed by the filed, posted, and published tariff.'

"Judgment is granted plaintiff as prayed for. . . ."

See also Pyramid Nat. Van Lines v. Goetze, 65 A.2d 595 (Mun.Ct.App.Dist. of Col.1949), and 66 A.2d 693 (1949); Pennsylvania R. Co. v. L. N. White, Inc., 280 App.Div. 587, 116 N.Y.S.2d 361 (Sup.Ct. App.Div. First Dept.1952); Aero Mayflower Transit Co. v. Rae, 203 Misc. 801, 118 N.Y.S.2d 895 (1952); Steele v. General Mills, Inc., 329 U.S. 433, 67 S.Ct. 439, 91 L.Ed. 402 (1947); Chicago, R. I. & P. Railway Company v. Central Warehouse Company, 8 Cir., 14 F.2d 123 (D.C.Minn. 1926).

Appellee submits that when the construction of a federal statute is involved, deference should be given to the interpretation of that statute by Federal Court decisions. The three Federal Court decisions relied upon by appellee are: Missouri Pacific Railroad Co. v. National Milling Co., 276 F.Supp. 367 (D.N.J.1967), affirmed, 406 F.2d 882 (3d Cir. 1969); Missouri Pacific R. Co. v. Lake Charles Grain and Groc. Co., Inc., 320 F.Supp. 1064 (W.D.La.1971); and, Farrell Lines, Inc. v. Titan Industrial Corp., 306 F.Supp. 1348 (S.D.N.Y.1969), affirmed per curiam, 419 F.2d 835 (2d Cir. 1969), certiorari denied, 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970). The first two cases cited by appellee are rail carrier cases and the last case cited is an ocean carrier case.

Our research reveals that Consolidated Freightways Corporation of Delaware v. Admiral Corporation, 442 F.2d 56 (U.S.Ct. App., 7th Cir. 1971) is decisive of the question before us. There the plaintiff was an interstate motor carrier that sued Admiral Corporation for recovery of freight charges. Admiral was the consignee of goods transported by plaintiff at the direction of William A. Rogers, the shipper. The goods were shipped under plaintiff's prepaid bill of lading and Admiral paid Rogers for his services and the freight charges. Plaintiff, Consolidated Freightways Corporation, was extending credit (unknown to Admiral) to Rogers for the freight charges. When Rogers became insolvent and unable to pay the charges, Consolidated sought payment from the consignee, Admiral. Admiral alleged that plaintiff was estopped to proceed against it for the collection of the freight charges. The court held that the doctrine of estoppel was available as a defense and that Sec. 223 of the Motor Carrier Act (49 U.S.C.A. Sec. 323) does not impose absolute statutory liability upon the consignee. The court said:

"Plaintiff also urges that Admiral acted improperly in settling Rogers' invoices without demanding receipts from Rogers evidencing actual payment of the charges to the carrier. In that manner, it is claimed, Admiral could have prevented any fraud by Rogers and protected itself against possible double liability for those charges. Plaintiff ignores, however, the weight which Admiral could justifiably attach to the representations made on the shipping documents. We see no reason, however, for a double check by Admiral in the face of the representations of prepayment supplied by the carrier itself. Plaintiff could have indicated on those documents the exact nature of its credit transactions with Rogers. Its extensions of credit to Rogers neither involved nor benefited the unsuspecting consignee. Plaintiff may not now shift the risk of its own credit transactions to an innocent party acting in reliance upon plaintiff's incorrect representations of prepayment."

The court went on to say that because of the unlawful and lax credit extensions the plaintiff contributed substantially to an ultimate inability to recover payment from the shipper and further declared:

"Plaintiff thus created the risk of loss by its credit practices. It contributed to the gravity of the loss by allowing Rogers' unsatisfied debts to accumulate beyond the lawful and reasonable time for credit. Finally, it effectively prevented Admiral from protecting itself from Rogers' conversions, first through the misrepresentations of prepayment, and then

through its failure to notify Admiral until May, 1966. Under these circumstances, we find no difficulty in holding plaintiff estopped to collect payment of the freight charges from Admiral."

After a thorough review of the decisions, we have concluded that the appellant, Tom Hicks Transfer Company, Inc., is estopped to collect the unpaid freight charges from appellee Ford, Bacon & Davis Texas Inc., when it carried the machinery from Haltom Manufacturing Company in Dallas to South Louisiana with bills of lading marked "Prepaid." We find no error committed by the trial court. The judgment of the trial court is affirmed.