GREYVAN STORAGE, INC. *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    February 7, 1955. — June 16, 1955.

Present: QUA, C.J., RONAN, WILKINS, & COUNIHAN, JJ.

*Carrier,* Contract carrier, Distinguishing plate, Carrier of goods.

Want of responsibility to shippers of property on the part of an owner of motor vehicles who transported property in them upon ways as an independent contractor solely pursuant to a contract with a common carrier which made the contracts of shipment with the shippers or issued the bills of lading did not preclude the owner of the motor vehicles from being a "contract carrier by motor vehicle" within the definition in G. L. (Ter. Ed.) c. 159B, § 2, as appearing in St. 1941, c. 704, § 2. [717]

An owner of motor vehicles was engaged in the transportation of property for compensation upon ways within the definition of contract carriers in G. L. (Ter. Ed.) c. 159B, § 2, as appearing in St. 1941, c. 704, § 2, where he or his employees operated his vehicles and moved furniture for a common carrier pursuant to a contract providing, among other things, that the owner or his employees should operate his motor vehicles for the carrier exclusively, that the carrier "has not the right to, and will not, control, or endeavor to control, the manner and means, or prescribe the method of doing that portion of the business which is contracted for herein" by the owner, who was to "be held responsible for results solely," that "the relationship herein created is that of

principal and independent contractor and not that of employer and employee," that the owner should furnish workmen's compensation for his employees and pay certain taxes respecting them, and that the owner should be paid by the carrier a certain percentage of the regular tariff charged by it to its customers. [720]

The department of public utilities properly refused an application by a corporation, engaged in the business of transporting property in intrastate commerce and holding an irregular route common carrier's certificate from the department, for the issuance of common carrier distinguishing plates under G. L. (Ter. Ed.) c. 159B, § 9, as appearing in St. 1938, c. 483, § 1, and as amended, for motor vehicles owned by one who had neither a certificate as a common carrier nor a permit as a contract carrier issued by the department and was to transport property exclusively for the corporation over ways for compensation as an independent contractor pursuant to a contract with the corporation. [721]

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on May 21, 1954.

The case was heard by *Williams, J.*

*Arthur E. Whittemore,* (*Benjamin H. Lacy & Barrett Elkins* with him,) for the plaintiff.

*Matthew S. Heaphy,* Assistant Attorney General, (*Jason A. Aisner,* Assistant Attorney General, with him,) for the defendant.

RONAN, J. This is an appeal by the plaintiff from a final decree dismissing its petition brought under G. L. (Ter. Ed.) c. 25, § 5, as appearing in St. 1953, c. 575, § 1, to review a decision of the department of public utilities which denied its application for certain common carrier distinguishing plates to be attached to two motor vehicles owned by one Lafond and operated by him or his employees in the transportation of property under a contract between the appellant and Lafond.

Greyvan Storage, Inc., an Illinois corporation, hereinafter called Greyvan, has a usual place of business within the Commonwealth and is engaged in the business of transporting household furniture in intrastate commerce. It holds a certificate from the department of public utilities, hereinafter called the department, authorizing it to conduct the business of an irregular route common carrier. It shares a portion of the common carriage business of Greyvan

Lines, Inc., an Indiana corporation and a large organization doing business throughout the United States. Greyvan entered into a written contract with Lafond on March 20, 1952, and now seeks two distinguishing plates as a common carrier to be attached to his vehicles while they are being operated by the latter or his employees in carrying out this contract with Greyvan.

In accordance with the contract Greyvan was to furnish business headquarters for Lafond, blank forms of contracts for Greyvan's services, all advertising, "housekeeping devices" and supplies, cargo insurance, general public liability insurance on its warehouse premises, warehouse insurance and such other insurance as it might elect, and the necessary employees to carry out Greyvan's part of the contract. It had the right to obtain public liability and property damage insurance on Lafond's vehicles, charging the cost to him. It was to keep the bookkeeping records, including those carrying all accounts receivable. It was to maintain at its own expense the equipment and fixtures which it was to furnish and was to pay the operating cost thereof exclusive of the cost of labor. With certain exceptions, it was to pay for vehicle licenses, franchise fees, permits or taxes required for the operation of Lafond's vehicles. Greyvan was entitled to full information with respect to, and must approve, any employee packing or unpacking household furniture in a dwelling, or one driving one of Lafond's motor vehicles, or a job foreman, or any employee doing some other job inside the warehouse except certain loading or unloading tasks.

Lafond was required by the contract to furnish the motor vehicles, certain operating licenses, packing materials, hand tools, and the labor to perform his services, to pay unemployment taxes, to carry public liability and property damage insurance on his vehicles, and workmen's compensation and employer's liability insurance on his employees. He was obliged to furnish a fidelity bond to indemnify Greyvan against his own default and a surety bond covering his employees. He was bound to use his vehicles for the exclusive use of Greyvan, to deliver to Greyvan the money collected

by him, to keep his vehicles in good repair and to pay their operating cost, to observe the laws in the driving of his vehicles, and to accumulate a cash reserve fund of $500 with Greyvan. He was to be compensated by Greyvan by certain percentages of the regular charges made by Greyvan to the public. The contract stated that the relation between the parties was that of principal and independent contractor and not that of employer and employee. The contract ran from year to year, until one party gave thirty days' notice that he wished to terminate it.

The present application seeks to secure distinguishing plates for each of Lafond's vehicles while engaged in carrying out the terms of the contract. The statute, G. L. (Ter. Ed.) c. 159B, § 9, as appearing in St. 1938, c. 483, § 1, and as amended by St. 1941, c. 483, § 1, and subsequent amendments, at the time of filing the petition on May 21, 1954, provided that the department should issue to the holder of a certificate or a permit a plate which should be attached to the front of the vehicle and which should not be transferred from one vehicle to another without the consent of the department, and that the driver should have in his possession while operating the vehicle a certificate issued by the department setting forth the make, serial number, and motor number of the vehicle with respect to which the plate was issued.

Both common and contract carriers are defined by statute. A common carrier by motor vehicle is defined as one "who directly, or by his agent or under a lease or any other arrangement, or by arrangement with any other common carrier or with any contract carrier, transports property . . . for the general public by motor vehicle, for compensation, upon ways, over regular or irregular routes . . . ." G. L. (Ter. Ed.) c. 159B, § 2, as appearing in St. 1938, c. 483, § 1. A contract carrier by motor vehicle is one not included in the above definition and not an agricultural carrier by motor vehicle "who, under special and individual contracts or agreements, directly or by his agent or under a lease or any other arrangements, transports property by motor vehicle

for compensation upon ways." G. L. (Ter. Ed.) c. 159B, § 2, as appearing in St. 1941, c. 704, § 2. These statutory definitions recognize the time old distinction in this Commonwealth between one who holds himself out to the general public as engaged in the business of a common carrier who is bound to transport goods upon the payment of reasonable compensation up to the capacity of his equipment and one who hauls goods only for those members of the public with whom he desires to deal and with whom he makes a special contract of carriage. *Dwight* v. *Brewster*, 1 Pick. 50, 53. *Houle* v. *Lewonis*, 245 Mass. 254, 255, 256. *First National Stores Inc.* v. *H. P. Welch Co.* 316 Mass. 147. *Rugg* v. *Davis*, 320 Mass. 388. *Mt. Tom Motor Line, Inc.* v. *McKesson & Robbins, Inc.* 325 Mass. 45.

One may not engage in the business of a common carrier by motor vehicle upon any way unless he has received a certificate of public convenience and necessity from the department which may be granted subject to such reasonable terms, conditions and limitations as the public necessity or convenience may require, but "no such terms, conditions or limitations shall restrict the right of the carrier to add to his equipment and facilities over the routes, between the termini, or within the territory specified in the certificate, as the development of the business and the demands of the public shall require." G. L. (Ter. Ed.) c. 159B, § 3, as appearing in St. 1938, c. 483, § 1, and as amended.

The Legislature has declared in G. L. (Ter. Ed.) c. 159B, § 4, as appearing in St. 1938, c. 483, § 1, and as amended by St. 1945, c. 400, § 3, that the business of a contract carrier is affected with the public interest and that the safety and welfare of the public on the ways, the preservation and maintenance of the ways, and the proper regulation of common carriers using the ways require the regulation of contract carriers. It is further provided in said § 4 that one may not engage in the business of a contract carrier unless he has been granted a permit by the department "authorizing him to transport property for the concerns specified, and within the limits set forth, in such permit." The depart-

ment shall issue a permit under said section if such action is found to be consistent with the public interest, the safety of the public in the use of the ways, the preservation of the ways, and the proper regulation of common carriers using the ways. The holder of a permit may increase his equipment as his business shall need and the demands of the public shall require.

Greyvan contends that Lafond does not transport property by motor vehicle within the meaning of c. 159B unless he has control over the movement and handling of the property combined with responsibility to the shipper of that property or, in other words, one who lacks such control of and responsibility for the property cannot be deemed to be transporting the property even though he has full charge of the operation of the motor vehicle conveying the property. Even though Lafond transports under contracts of shipping or bills of lading issued by Greyvan, he is ultimately liable under his contract with Greyvan, and want of responsibility, if all other factors were present to constitute him a contract carrier, would not be sufficient to change his status. *Motor Haulage Co. Inc.* v. *United States*, 70 Fed. Sup. 17, affirmed 331 U. S. 784. *Motor Haulage Co. Inc.* v. *Maltbie*, 293 N. Y. 338.

The actual transportation of property for compensation is to be performed by Lafond or his employees. Lafond is to operate his motor vehicles exclusively for Greyvan. He does not hold himself ready to do hauling for the general public and consequently is not a common carrier. He has neither a certificate as a common carrier nor a permit as a contract carrier. Would the operation of his vehicles under the contract in the absence of a permit to him allow him to operate under the protection of the common carrier certificate of Greyvan? The contract itself goes far toward answering that question for in the first place it expressly provides that "it is understood that the Company [Greyvan] has not the right to, and will not, control, or endeavor to control, the manner and means, or prescribe the method of doing that portion of the business which is contracted

for herein by the Contractor [Lafond]. The Contractor will be held responsible for results solely," and secondly the contract states that "The relationship herein created is that of principal and independent contractor and not that of employer and employee." In the next place, the contract requires Lafond to furnish workmen's compensation for his employees and to pay the unemployment tax. Furthermore, Lafond was to be paid a certain percentage of the regular tariff charged by Greyvan to its customers for the work he was to perform. His compensation was to be the profits that he realized from the undertaking and not the wages he earned.

In *United States* v. *Silk* and *Harrison* v. *Greyvan Lines, Inc.* 331 U. S. 704, the question arose whether the taxpayers were liable for the social security tax imposed upon the compensation paid to those who operated trucks furnished with drivers by their owners in conducting the business of the taxpayer. The contract between the owners of motor vehicles and the Greyvan Lines, Inc. (associated with the present appellant), is set out in substance at pages 708–710. In many salient points it resembles the contract between the appellant and Lafond. It was there said that "These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors" (page 719). *Bartels* v. *Birmingham,* 332 U. S. 126. *United States* v. *Mutual Trucking Co.* 141 Fed. (2d) 655. *Woods* v. *Nicholas,* 163 Fed. (2d) 615. *National Labor Relations Board* v. *Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135,* 212 Fed. (2d) 216. *Durkin* v. *Pet Milk Co.* 115 Fed. Sup. 628. This test in determining whether an employer-employee relationship or that of an independent contractor between parties hiring a vehicle with a driver exists is in accord with our own decisions. *Coughlan*

v. *Cambridge,* 166 Mass. 268. *Shepard* v. *Jacobs,* 204 Mass. 110. *McDermott's Case,* 283 Mass. 74. *Garfield* v. *Smith,* 317 Mass. 674.

In support of its contention that Lafond was not engaged in the transportation of goods for compensation the appellant relies upon *United States* v. *N. E. Rosenblum Truck Lines, Inc.* 315 U. S. 50, and *Thomson* v. *United States,* 321 U. S. 19. In the first case a permit as a contract carrier and in the second case a certificate as a common carrier was sought under the grandfather clause, so called, U. S. C. (1946 ed.) Title 49, §§ 306, 309. In the first case a permit was denied although Rosenblum was engaged on the critical date mentioned in § 309 and prior thereto in hauling goods for common carriers when the latter were unable to handle their overflow freight. In the second case, the trustee of a railroad had on the crucial date conducted a coördinated rail and motor service employing over a score of motor carriers in assisting it in carrying freight. A certificate was granted in the second case. It was held that it was not the intent of Congress to grant multiple "grandfather" rights to those who at the request of a common carrier aid and assist the latter in the territory served by it in the full performance of the single complete transportation undertaken by it with the general public. In neither case was there any contention that the applicant was not engaged in the transportation of goods over the ways but the only question was whether the transportation performed by the applicant considered relative to that furnished by others, in carrying out a single line haul, entitled him to the preference given by the grandfather clause. These cases do not shed much light on the question before us. The act of Congress involved in these cases is materially different from the statute now in question and the aims of these enactments are entirely dissimilar. The question here is not whether a carrier is entitled to any preferential right to receive a certificate or permit but whether a certificated carrier is entitled to plates to attach to the vehicles of an independent contractor with whom it has contracted to do a part of its trans-

portation when the contractor has no permit to do such work.

We think that it cannot be said that Lafond was only engaged in letting motor vehicles. It is plain that he was engaged in the actual transportation of property for hire. *Lloyd A. Fry Roofing Co.* v. *Wood,* 344 U. S. 157. *Georgia Truck System, Inc.* v. *Interstate Commerce Commission,* 123 Fed. (2d) 210. *Bridge Auto Renting Corp.* v. *Pedrick,* 174 Fed. (2d) 733. *Motor Haulage Co. Inc.* v. *United States,* 70 Fed. Sup. 17, affirmed 331 U. S. 784. *John J. Casale, Inc.* v. *United States,* 86 Fed. Sup. 167. *Gulf Coast Towing Co. Inc.* v. *United States,* 98 Fed. Sup. 994. *Interstate Commerce Commission* v. *Werner,* 106 Fed. Sup. 497. *Service Tank Lines* v. *Johnson,* 61 Cal. App. (2d) 67. Compare *State* v. *Torrey,* 148 Maine, 107.

There is another line of Federal cases where it was necessary to decide whether one was engaged in the transportation of goods in order to determine his liability for the transportation tax under U. S. C. (1946 ed.) Title 26, § 3475, imposing a tax upon the amount paid for the transportation of property by various means including motor vehicles. "Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire . . . ." In the instant case the actual transportation or a part of it was to be performed by means of Lafond's vehicles operated by himself or his employees, and under his contract with Greyvan he was bound to collect the transportation charges and turn them over to Greyvan with which he was supposed to have a reserve fund of $500 to pay any indebtedness that might be due the latter. A company leasing motor vehicles with drivers so that all the customer had to do was to provide the goods for transport and direct the driver where to take them was engaged in the transportation of property by motor vehicles for hire and was subject to the tax received from that type of business. *Bridge Auto Renting Corp.* v. *Pedrick,* 174 Fed. (2d) 733, 738, certiorari denied 338 U. S. 850. *Gulf Coast Towing Co. Inc.* v. *United States,* 196 Fed. (2d) 944. *John J.*

*Casale, Inc.* v. *United States,* 86 Fed. Sup. 167, certiorari denied 338 U. 'S. 954.

We perceive no error in the refusal of the department to grant Greyvan's application for plates for Lafond's vehicles which in the circumstances could not be legally operated under the contract until a permit had been issued to him nor in the action of the single justice in dismissing the petition and in denying the requests for rulings.

*Decree affirmed.*